IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

LANCASTER DISTRICT—December Adjourned Court, 1829.

The BANK OF PENNSYLVANIA *against* JACOB M. HAL-DEMAN and RICHARD T. JACOBS, Administrators *de bonis non*, with the will annexed, of SAMUEL JACOBS, deceased.

## IN ERROR.

Upon the allegation of forgery, it is not necessary to produce, as witnesses, *all* the persons in whose possession the forged paper had been, in order to identify it—its identity is a matter of fact for the jury.

A comparison of hand-writing, is admissible in evidence in civil cases in corroboration of a belief of a witness, founded upon actual knowledge.

The testimony of an *expert*, who speaks alone from his knowledge and skill in hand-writing, is not competent to establish a forgery.

When the court of Common Pleas, erroneously permit evidence to be given to the jury, no such evidence being afterwards given, this court will not reverse the judgment.

If an executor, upon the settlement of an account of his testator, allows a credit for a check, this is not such an administration of this part of the assets as will preclude an administrator *de bonis non*, from sustaining an action to recover the amount of the check, which he proved to be a forgery.

A promise laid in one count, as having been made to the testator in his lifetime; and in another, as having been made to his administrators after his death, is not such a misjoinder of counts, as will be fatal to a general verdict and judgment.

Wherever the funds to which the money and the costs are to be applied, or out of which the costs are to be paid, are the same, and the money when recovered would be assets, then the counts may be joined.

Writ of error to the District Court of Lancaster county.

The defendants in error were plaintiffs below, and brought an action on the case, against the *Bank of Pennsylvania*, to recover the sum of two thousand five hundred dollars, with interest from the 22d March, 1819, under the following circumstances.

*Samuel Jacobs*, the plaintiff's testator, was a depositor in the *Bank of Pennsylvania*, which in the year 1819, paid six checks signed

21

(The Bank of Pennsylvania *v.* Jacob M. Haldeman, and Richard T. Jacobs, Administrators *de bonis non,* with the will annexed of Samuel Jacobs, deceased.)

" *Samuel Jacobs,*" the last of which was for two thousand five hundred dollars, and dated 22d March, 1819, and for the amount of which this suit is brought.

*Samuel Jacobs,* the testator, died on the 14th April, 1819, having first made a will and testament, by which he appointed *William Coleman* and *James Coleman* to be his executors. Afterwards, on the 5th June, 1819, *William Coleman* went to the bank, with the testator's bank-book, and had it settled, including the check of two thousand five hundred dollars in the settlement, and received from the bank the six checks. Upon his return to the late residence of his testator, some of the heirs doubted the genuineness of the check of the 22d March, 1819, and one of them pronounced it a forgery. On the 2d July, 1819, Mr. *Coleman* returned to the bank, and brought with him the checks and book, which were examined by the cashier and others, and then thought to be genuine, and Mr. *Coleman* was of the same opinion; and said that the heirs wished him to bring suit against the bank to recover the money, but unless they could produce some proof to him, he would not do it. On the same day, the balance in favour of *Samuel Jacobs,* of two thousand five hundred and eighty seven dollars and sixty-nine cents, was transferred by the check of *William Coleman,* to the credit of *William Coleman* and *James Coleman,* executors of *Samuel Jacobs,* deceased, with whom the account continued till 10th January, 1821, when it was finally closed, and the balance of three hundred and eighty-nine dollars and twenty-four cents, drawn out by *William Coleman.*

On the 3d January, 1821, *William* and *James Coleman* settled a final account of their administration of the estate of *Samuel Jacobs,* and were discharged by the orphans' court; when letters of administration *de bonis non,* with the will annexed of *Samuel Jacobs,* deceased, isued to *Jacob M. Haldeman* and *Richard T. Jacobs,* who gave to *William* and *James Coleman,* a receipt and acquittance in full for the balance in their hands.

The following declaration (the joinder of counts in which was assigned as error,) was filed.

Lancaster County, ss.

The President, Directors and Company of the Bank of Pennsylvania, were summoned to answer Jacob M. Haldeman and Richard T. Jacobs, administrators of all and singular the goods and chattels, rights and credits, which were of Samuel Jacobs deceased, left unadministered, with the will of the said Samuel Jacobs, deceased, annexed, of a plea of trespass on the case, &c. And whereupon, the said Jacob and the said Richard, by George W. Jacobs, their attorney, complain, That whereas the aforesaid President, Directors and Company, on the first day of March, in the year of our

(The Bank of Pennsylvania *v*, Jacob M. Haldeman and Richard T. Jacobs, Administrators *de bonis non*, with the will annexed, of Samuel Jacobs, deceased.)

Lord, one thousand eight hundred and nineteen, at the county aforesaid, were indebted to the said Samuel Jacobs, now deceased, in his lifetime, in the sum of five thousand dollars, lawful money of the United States, for so much money by the said President, Directors and Company, before that time had and received, to and for the use of said Samuel Jacobs, now deceased. And being so indebted, they, the said President, Directors and Company, in consideration thereof, afterwards, to wit: on the day and year last aforesaid, in the county of Lancaster aforesaid, undertook, and then and there faithfully promised the said Samuel Jacobs, now deceased, in his lifetime to pay him the said last mentioned sum of money, when they, the said President, Directors and Company should be thereunto afterwards requested.

Yet the said President, Directors and Company, not regarding their said promise and undertaking, but contriving and intending to deceive and defraud the said Samuel Jacobs, in his life time, and the said Jacob and the said Richard as administrators, as aforesaid, after the death of the said Samuel Jacobs in this behalf, have not as yet paid the said sum of money, or any part thereof, to the said Samuel Jacobs in his life time, or to the said Jacob or the said Richard, administrators aforesaid, since the death of the said Samuel Jacobs, (although often requested so to do,) but they so to do have hitherto wholly refused, and still do refuse, to pay the same or any part thereof to the said Jacob and the said Richard, as administrators as aforesaid.

And whereas, also the said Jacob M. Haldeman and Richard T. Jacobs, administrators of all and singular the goods, chattels and credits which were of Samuel Jacobs, deceased, left unadministered, with the will of the said Samuel Jacobs, deceased, annexed, complain against the President, Directors and Company of the Bank of Pennsylvania, For that whereas, heretofore to wit: on the twenty fourth day of December, in the year of our Lord, one thousand eight hundred and twenty-three, at the county of Lancaster, aforesaid, the aforesaid President, Directors and Company were indebted to the said Jacob and the said Richard, as administrators as aforesaid, in the sum of five thousand dollars, lawful money of the United States, for so much money by them, the said President, Directors and Company, to the use of the" said Jacob and the said Richard as administrators as aforesaid, before that time had and received: And being so indebted, they, the said President, Directors and Company, in consideration thereof, afterwards, to wit: on the day and year last aforesaid, undertook, and then and there faithfully promised the said Jacob and the said Richard, administrators as aforesaid, to pay them the said sum of money last mentioned, whenever afterwards they the said Presi-

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non*, with the will annexed, of Samuel Jacobs, deceased.)

dent, Directors and Company should be thereunto afterwards requested. Yet the said President, Directors and Company, not regarding their said promise and undertaking, so as aforesaid made, but contriving and intending to deceive and defraud the said Samuel Jacobs in his life-time, and the said Jacob and the said Richard, as administrators as aforesaid after the death of the said Samuel Jacobs, in this behalf, hath not as yet paid the said sum of money, or any part thereof, to the said Samuel Jacobs in his life-time, or to the said Jacob and the said Richard, as administrators as aforesaid, since the death of the said Samuel Jacobs, although to do the same, afterwards to wit: the second day of January, in the year of our Lord one thousand eight hundred and twenty-four, at the county of Lancaster, aforesaid, they were required; but the same to pay to them, the said Jacob and the said Richard, as administrators as aforesaid, they the said President, Directors and Company have hitherto wholly refused and still refuse to pay the same, or any part thereof, although often requested so to do.—To the damage of the said Jacob M. Haldeman and Richard T. Jacobs, as administrators as aforesaid, in the sum of seven thousand dollars.
And therefore they bring this suit, &c.

JOHN DOE and ⎫ *Pledges of*
RICHARD ROE, ⎰ *Prosecution.*

And the said Jacob M. Haldeman and Richard T. Jacobs, bring here into court the letters of administration in due form of law, which give sufficient evidence to the said court here, of the grant of administration to the said Jacob and said Richard as aforesaid.

The pleas were *non assumpsit*, and payment with leave &c. replication, *non solvit.* Issues.

The plaintiffs, to maintain the issue on their part, called Mr. *Ogilby*, the cashier of the bank, to whom the six checks were exhibited, and who said, "I presume these are the same checks I gave to Mr. *William Coleman*: I believe the checks to be the same." They then offered to read the checks to the jury; to which the defendant objected, which objection was overruled by the court, and the evidence admitted, which formed the *first bill of exceptions.*

General *Foster*, being sworn as a witness, and having said, that he was well acquainted with the hand-writing of *Samuel Jacobs:* 'The plaintiffs proposed to ask him this question: "from your knowledge of the hand-writing of *Samuel Jacobs*, and from comparing the check of March 22d, 1819, with those parts of the check of Jan. 20th, Jan. 21st, Feb. 4th, March 1st, and March 21st, 1819, which you have stated to be in his hand-writing, what is your opinion and belief as to the signature and body of the check of March 22d, 1819, being in the hand-writing of *Samuel Jacobs*,"—

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non*, with the will annexed, of Samuel Jacobs, deceased.)

to which the defendant objected, but the objection was overruled and evidence given, which formed *the second bill of exceptions.*

The plaintiffs then offered to prove, "*that John Eberman is and has been cashier of the Farmers' Bank of Lancaster for 12 years—that Wm. White was cashier of the Lancaster Bank for seven years prior to October, 1824—that John Schmidt is and has been cashier of the York Bank for ten years—and that the said Eberman, White and Schmidt, are and have been for the said number of years, experienced and skilled in the examination of bank notes, checks and other writings, with a view and for the purpose of detecting forgeries.*" And to prove by said witnesses that in their opinion and belief, the check of 22d March, 1819, is not the hand-writing of *Samuel Jacobs,* nor any part thereof—said opinion and belief being formed from comparing the said check with the signature and whole check of January 20th, 1819,—the signature to the check of January 21st, 1819—the signature and whole check of February 4th, 1819, excepting the marks and figures at the head "$350=00" the signature to the check of March 1st, 1819, and with the whole check of 21st March, 1819: which have been testified by *John Forster, Henry Alward* and *Joseph Wallace,* to be in the hand-writing of *Samuel Jacobs, and that in their opinion and belief the part of the check of March 22d, 1819, which is in writing, is written in an imitated character or traced hand.*"—To all which the defendant objected, but the court admitted to go in evidence, that part of the offer, which is in italic letter, which formed *the third bill of exceptions.*

*John Eberman* was then sworn, and said, "that he had been cashier of the Farmers' Bank of Lancaster eleven years, that he was often called upon to detect forgeries,"—as to the check in question, he said, "from the appearance of this check I could not say that it is imitated: I never saw Mr. *Jacobs* write; I do not know his hand-writing at all." The witness was then shewn the check of the 21st March, 1819; and the plaintiffs offered to prove by him, "That in the beginning of the year 1824 or about that time, this check of the 21st March, 1819, with the other 5, were exhibited to the witness. That at that time, in the word March, the h had a singular turn at the end of it, which the witness will describe—that the witness was not certain whether it was ink or some other substance which adhered to the paper—that the witness touched it with his pen-knife to ascertain what it was, and it came off—the mark of it being yet visible or nearly so on the paper; and that the said mark was precisely similar to the mark at the end of the h, in the word March, on the check of 22d March, 1819, for two thousand five hundred dollars," which was objected to, objection overruled, and testimony admitted; which formed *the fourth bill of exceptions.*

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

*John Schmidt,* the witness mentioned in the third bill of exceptions, as to the check in question said, "I would not undertake to say whether that be a traced or fair hand; I should suppose it a slow hand; I would consider it a stiff hand. It would be necessary for me to compare it with other writing to ascertain whether it is a traced hand or not; I am not acquainted with the hand-writing of Mr. *Jacobs.*"

*William White* was not sworn at all.

The plaintiffs then offered to prove by *Christian Brubaker,* that in the winter or spring of 1819, as executor of one *Kyser,* he sold a plantation to *Samuel Jacobs,* for four thousand dollars, payable on the 1st April, 1819; that witness wanted money to loan to his brother, and went to Mr. *Jacobs* and got *in advance* one thousand dollars, on the 22d March, 1819, by a check on the Office of Discount and Deposit at Lancaster, here shewn, and erroneously dated 21st March, 1819; that soon after that, Mr. *Jacobs* got sick, and witness never saw him again; witness went to his house or office, on the 1st April, 1819, but found him so sick that he did not see him; the balance of the money due witness, was paid in cash by *William Coleman,* after Mr. *Jacobs'* death,"—which evidence was objected to by the defendant, the objection overruled by the court, and testimony admitted, which formed *the fifth bill of exceptions.*

The plaintiffs having closed their testimony, the counsel for the defendants before they proceeded to open their case, moved the court to withdraw from the consideration of the jury, the six checks given in evidence, on the ground that they had not been legally identified; and to overrule all the evidence given on the part of the plaintiffs, except that contained in the first twelve lines of the *Judges* notes of Mr. *Ogilby's* testimony, Which the court refused to do, and which formed *the sixth bill of exceptions.*

The defendants to maintain the issues on their part, now offer after the evidence already given, the inventory exhibited on the 22d May, 1819, by *Wm.* and *James Coleman,* executors of *Samuel Jacobs,* deceased, to the Register of the county of Lebanon, and also the administration account of the said executors, exhibited 1st December, 1820, and finally passed and confirmed on 3d January, 1821, and in connection with those, a receipt and acquittance from *Jacob M. Haldeman* and *Richard T. Jacobs,* administrators *de bonis non* then appointed, bearing date 3d January, 1821, the said receipt and acquittance having been given by the said administrators *de bonis non* to the aforesaid executors," to which the plaintiffs objected, the court sustained the objection, which formed *the seventh bill of exceptions.*

The defendants' testimony being closed, the plaintiffs made the following offer "The defendants having given in evidence by Mr.

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.

*Ogilby,* that the check of two thousand five hundred dollars, was paid to a boy; the plaintiffs now offer to prove that *Christian Brubaker* sent his check of one thousand dollars, dated 21st March, 1819, to the bank, by a boy out of *Ober* and *Kline's* store—that the boy who went to the bank for the money was about 12 or 14 years of age, who returned in a few minutes and brought the money with him," to which the defendant objected, the objection was overruled, and testimony admitted, which formed *the eighth bill of exceptions.*

The testimony being closed, the defendant propounded to the court, the following points, upon which they were requested to charge the jury.

1. That after probate of the will and a grant of letters of administration, an executor is the only legal representative of the testator, for the purpose of settling his estate. That in the settlement of the personal estate, at least, his powers are limited only by the laws of the land, or by an express restriction in the will. That he may collect debts and pay creditors, settle or compound for outstanding accounts, and that so far as regards the debtors and creditors, the settlement is final and conclusive, and can never be enquired into or overhauled by any succeeding executor or administrator *de bonis non.*

2. That an administrator *de bonis non* is confined by his very appointment, to the administration of such portion of the estate, as was *unadministered* by his predecessors.

3. That as it is an uncontradicted proof, that *W. Coleman,* one of the executors duly appointed of *Samuel Jacobs,* deceased, did on the 5th June, 1819, settle the accounts of his testator with the office of Discount and Deposit at Lancaster, and approved of its correctness; and at that time received and took into his possession all the checks then remaining in the said office; including the one dated 22d March, 1819, the subject-matter of this suit; and as he on 2d July following, after full knowledge of the suspicions entertained by some of the heirs as to the genuineness of the above mentioned check, drew by his check of 2d July, 1819, in the name of *Wm. Coleman,* executor of *Samuel Jacobs,* deceased, the whole balance then due to his testator by the said office, viz: two thousand five hundred eighty-seven dollars and sixty-nine cents: and afterwards deposited the same to the credit of *Wm.* and *James Coleman,* executors of *Samuel Jacobs,* deceased; that this was such a settlement as must completely protect the present defendants.

4. That as it is in express proof, by the letter of administrations *de bonis non* given in evidence by the plaintiffs, that subsequently to the 2d of July, 1819, the date of the settlement with the office of Discount and Deposit as set forth in the preceding point, *Wm.* and *James Coleman,* executors of *Samuel Jacobs,* deceased, settled their

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

administration account on the said estate, and that the same was approved of by the orphans' court of the county of Lebanon, before they were discharged from their trust as executors aforesaid; and as the said account remains until this day in full force and unappealed from, that this is such an administration of this part of the assets, as must entirely prevent the present plaintiffs from recovering in this suit.

5. That as the money, the subject matter of the present suit, was voluntarily settled for, and paid by the executors of *Samuel Jacobs,* deceased, to the present defendants, and by them received without any fraud or unfair practice, it could never be recovered even by the executors themselves, and *a fortiori* not by the administrators *de bonis non.*

6. That it is well settled as a general rule of evidence, that the best evidence the nature of the case will admit of, must be produced; and as it is in proof that *William Coleman,* to whom *Joseph Ogilby* the witness, delivered the checks, was present, attending the trial of this cause; and as the plaintiffs have not thought proper to call him to prove the identity of the six checks read in evidence to the jury, and particularly the check of 22d March, 1819, for two thousand five hundred dollars, now alleged to be counterfeit, and to recover the amount of which, with interest, this suit is brought; the plaintiffs therefore cannot recover, and the jury must find for the defendants.

7. That the belief of the three witnesses, *Joseph Ogilby, John Elder* and *George Beckel,* as to the identity of the check of 22d March, 1819, is not evidence, that it is the same check that was paid by *Joseph Ogilby;* the plaintiffs must prove the actual fact of identity, and not having done so, they cannot recover in this suit.

8. That *mere belief* is no evidence, except from necessity; and when the party has it in his power to prove the actual fact, he must do so, and nothing short of that is evidence.—And wherever there is an allegation of forgery, as in this case, it is indispensably necessary to prove the *identity* of the thing alleged to be forged; and as the plaintiffs (if the fact were so,) had it in their power to prove that this was the *identical* check paid by Mr. *Ogilby,* and have not so proved, they have failed to maintain their action and the verdict must be in favor of the defendants.

9. That the opinion and belief of witnesses, in regard to the genuineness of writing, must be founded upon the impression made upon their minds by the hand-writing itself; and opinion or belief founded not upon this, but upon extrinsic circumstances is *prima facie* evidence of the genuineness of the instrument in question.

WILLIAM JENKINS,
JOHN R. MONTGOMERY.

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

CHARGE OF THE COURT.—This is an action on the case, brought by the administrators *de bonis non,* of Samuel Jacobs, deceased, against the Bank of Pennsylvania, to recover from that institution, two thousand five hundred dollars, which the plaintiffs allege was improperly credited to the bank, in the deposit account of the deceased, on a check which they allege is forged, dated on the 22d March, 1819, for that sum.

Administrators *de bonis non,* are administrators after the first administrators or executors of a deceased have died, or have been discharged by the proper authority from their trust. Their office is to administer the goods and chattels of the deceased, which have not been administered by the first administrator or executor; and one of the questions that arise in this cause, of which the court will give you their opinion presently, is, whether the money in question has been administered upon by *William* and *James Coleman,* who were the executors of the will of the deceased.

1st. point. The executors of a deceased are, during their continuance in office, the only representatives of the deceased, in relation to his personal property, and in the discharge of their trust in settling and managing the personal estate, their power is limited only by the law and the will of the testator, whom they represent. They may collect debts, pay creditors, and settle and compound for outstanding accounts. In this case the defendants contend, that the executors on the 5th of June, 1819, made a settlement of the account between the estate of *Samuel Jacobs,* deceased, and the bank; and that on the 2d of July, afterwards, they recognized the settlement, by drawing from the bank the balance due on the books of the institution, and depositing it to their credit as executors. That in the settlement there was comprised, as one of the items of credit to the bank, the sum of two thousand five hundred dollars, which the bank had paid on the check of the 22d March, now alleged to be forged. The plaintiffs deny that this was a final settlement of the accounts between the bank and the estate, and allege that no examination of the items took place by the executors who made it, and contend that it amounts to no more than receiving on their part, from the bank, what appeared due on its books. Whether the executors, or any one of them, did examine the account and approve of it, and make a final settlement, is a matter of fact for your consideration. If they did not make a final settlement with the bank, but only received from the institution what appeared to be due on its books, then, if the check in question be a forgery, and the bank has taken credit for it, and has not paid it to the executors—the two thousand five hundred dollars in question, are a part of the estate of the deceased, which was not administered upon by the executors, and may be recovered in this action.

22

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs,
administrators *de bonis non,* with the will annexed, of Samuel Jacobs,
deceased.)

A settlement made by an executor, between the estate of the
testator and one who is indebted to it, is so far final and conclusive
upon the subsequent administrator *de bonis non,* who is appointed
after the executor resigns or dies, that he cannot overturn it, unless
he can shew, by clear and satisfactory evidence, that there was
a mistake in such settlement, or some fraud practised on the exe-
cutor, by which such debtor obtained a credit against the estate,
to which he was not in law or justice entitled. If he can so make
out such mistake or fraud, the administrator *de bonis non,* may
recover the amount of such mistake, as goods of the deceased
which have not been administered by the executor. To apply this
rule to the present case. If the jury are satisfied, that the check
in question of the 22d of March 1819, for two thousand five hun-
dred dollars, is the same check for which the bank, in the settle-
ment with the executors got a credit of that sum; if they are also
satisfied that the check is a forged paper, and that in the settle-
ment, the executors of *Samuel Jacobs* supposed it to be genuine, and
under that mistake on their part, it was credited to the bank;
then the two thousand five hundred dollars, in the check mentioned,
may be recovered by the present plaintiffs, as so much of the estate
of the deceased *Samuel Jacobs,* which did not come to the hands of
his executors, and was not administered by them.

2d point. The administrator *de bonis non,* is confined by his
appointment, to the administration of such portions of the estate, as
were unadministered by his predecessor.

3d point. In answer to the third point, the court say—whether
the facts be as they are stated in this point, the jury must judge—
but taking them to be all true, as they are stated, it does not follow,
as an unconditional conclusion of law, that the plaintiffs cannot
recover. If such fraud or mistake happened in the settlement, if
one was made, as the court has mentioned, and the jury are satis-
fied of the identity of the check in question—that it is forged, and
that it was credited in the settlement by the executors under a
mistaken idea that it is genuine, as the court has already said, the
plaintiffs may recover.

If the jury be of opinion, that the executors did, on the 5th of
June, 1819, make a settlement of the account between the estate
and the bank, and that afterwards, on the 2d of July, 1819, and
after they had their attention drawn to the subject, by being
informed of the suspicions of some of the heirs that the check in
question was a forgery, they confirmed it—they will take it into
consideration, together with the lapse of time from July, 1819
before the bringing of this suit, when they come to make up their
opinion on the question, whether the check of 22d March, 1819, is
a forgery or not.

(The Bank of Pennnsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

4th point. In answer to the fourth point the court say—That the recitals in the letters of administration *de bonis non,* given in evidence by the plaintiffs, must be taken to be true. They show that before the granting of them, the executors had settled their account, as stated in this point. The presumption of law is, that the account, so settled by the executors, contained a full and per-- fect account of all the assets of the deceased, which had come to their hands at the time they were discharged from their trust, and that it was duly settled and approved by the proper authority. Whether the settling of the administration account by the exe- cutors, as stated in this point, was an administration of the part of the assets of the deceased, now in question in this suit, depends on the fact, whether the two thousand five hundred dollars, mentioned in the check in question, had previously to that time, come to the hands of the executors. If they had received the money in ques-- tion from the bank, the plaintiffs could not recover in this suit, whether they charged themselves with it in their administration account or not. If they charged themselves with it in their admin- istration account, settled by them, they have administered on it, and the plaintiffs cannot recover, whether they have received it of the bank or not. If they neither received it from the bank, nor charged themselves with it in their account, then the settling of an account as mentioned in this point, would not be an administra- tion on this part of the assets of the deceased, and the plaintiff is not, on that account, prevented from recovering.

5th point. In answer to the fifth point the court say—Where money is paid by one man to another in such circumstances, that the party who receives it may, in good faith and conscience retain it. But when a bank has credit allowed to it in a settlement with an individual, for a check it has previously paid out, this is no payment by the individual to the bank, whether the check be genuine or forged. If it be a genuine check, the bank of course cannot be called on again for the money—if it be forged it can..

6th point. To the sixth point the court say—In a prosecution for a forgery of a bank note, it is necessary for the prosecutor to show, either that there is some particular mark on the paper charged to be forged, by which it can be identified, or he must produce every person who has had the custody of it since it was passed by the prisoner, to make out the identity. But the court is of opinion, this strictness is not necessary in civil cases; in criminal cases the prosecutor is himself a witness, and there- fore can form a link in the chain of proof of identity—but in civil cases the plaintiff cannot be examined, and therefore if it were necessary to produce as a witness in court, every person who has had custody of the paper, when it had come to the hands of

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

the plaintiff, the identity could not be made out, except in cases where some particular mark had been put on it. Secondary evidence is such as indicates, that there is better evidence behind, in the power of the party, which he declines to produce. Whether *William Coleman* could have identified the check in question better than the witnesses who have been examined, is entirely contingent —they had passed out of his hands into the hands of the plaintiffs. The court is therefore of opinion, that the plaintiffs were not bound to produce *William Coleman,* to prove the identity of the check in question. Whether they be the same checks which were by the bank delivered by *William Coleman,* is a matter of fact, which must be submitted to the jury.

7th point. In answer to the seventh point the court say—Mere belief of a witness unacquainted with the matter touching what is to be examined, is certainly no evidence. The witnesses who speak on the subject of the identity of the check of the 22d March, 1819, are the cashier of the bank, *J. Ogilby,* and *George Beckel,* who was at the time a clerk in the institution; both of whom had seen it in bank, and *John Elder,* who had seen it while it was in the custody of *William Coleman.* You have heard what these witnesses have said on the subject. The fact that the check given in evidence of the 22d March, 1819, is the same, or whether the bank had the two thousand five hundred dollars in question in this suit, is an important one in this cause, and before the plaintiffs can recover, they must make it out by clear and satisfactory evidence. If the evidence before you, satisfies your minds of the fact, that the check given in evidence is the same check, you may find it without any more positive proof: If you are not satisfied of this fact, your verdict ought to be for the defendants.

8th point. The court have already in substance answered this point. The court have submitted to you, the question of fact in relation to the identity of this check of 22d March 1819, as well as of the other checks. It is for you to judge, whether the evidence gives you entire satisfaction or not. If it does not, you ought to find for the defendants; if it does, then you will find the fact of the identity, as the court have referred it to you.

9th point. The opinion of a witness in regard to the genuineness of a writing, must be founded on impressions made on his mind by hand-writing itself. When a witness is called who knows the hand-writing of the person whose name is alleged to be forged, and he is of opinion, without referring to facts extrinsic of the writing, that it is a genuine paper, his evidence must go to the jury as *prima facia* evidence of the genuineness of the paper. If such a witness cannot say, on examining it, whether it is genuine or not, without recurring to extrinsic facts in relation to it, it proves either that it is the

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administators *de bonis non*, with the will annexed, of Samuel Jacobs, deceased.)

hand of the person who purports to have written it, or that it is so good an imitation, that it is very difficult to discriminate between it and the genuine writing of the person.

Finally, the case submitted to your consideration is an important one, not only on account of the amount in controversy, but on account of the nature of the facts which you are to determine. The plaintiffs allege, that the check in question, of the 22d March, 1819, is the same check on which the bank paid out the two thousand five hundred dollars, for which the suit is brought, and that it is a forgery. If they have made out these facts by evidence which satisfies your minds, they can recover; but if they have failed in proving either of them, to your satisfaction, they cannot recover.

In this court the following errors were assigned:

1. The court erred in admitting in evidence, the checks objected to by the defendant's counsel, and enumerated in, and made the subject of the first bill of exceptions.

2. The court erred in permitting the plaintiffs to give in evidence, the matters contained in, and made the subject of the second bill of exceptions.

3. The court erred in permitting the plaintiffs to give in evidence, that part of the offer marked in *italic letter*, and recited in, and made the subject of the third bill of exceptions.

4. The court erred in permitting the plaintiffs to give in evidence, the matters contained in, and made the subject of the fourth bill of exceptions.

5. The court erred in permitting the plaintiffs to give in evidence, the matters contained in, and made the subject of the fifth bill of exceptions.

6. The court erred in over-ruling the motion made by the counsel of the defendants, and contained in, and made the subject of the sixth bill of exceptions.

7. The court erred in refusing to allow the defendants to give in evidence the matters contained in, and made the subject of the seventh bill of exceptions.

8. The court erred in admitting in evidence, on the part of the plaintiffs, the matters contained in, and made the subject of the eighth bill of exceptions.

9. The court erred in their answers to the first, third, fourth fifth, sixth, seventh and eighth points, proposed by the counsel for the defendants.

10. There is a misjoinder of counts in the declaration, and the general verdict rendered thereon is erroneous.

11. The declaration sets forth no cause of action on the part of the plaintiffs.

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

*Montgomery* and *Jenkins,* for plaintiff in error.

1st bill. Mr. *Ogilby* having parted with the possession of the checks, and they having passed into the hands of several persons afterwards, his testimony was not sufficient so to identify the checks, as to make them competent evidence to go to the jury. If a wit-ness who identifies a forged paper has parted with the possession of it for a time, the person into whose possession it was put by him, must be called. *Commonwealth* v. *Kinnison,* 4 *Mass Rep.* 646.

2d bill. Although the witness had seen the testator, Mr. *Jacobs,* write, and knew his hand-writing, yet he was permitted to answer the question, not predicated upon his knowledge, but upon the comparison of the hand-writing in the check in question, with other checks admitted to be genuine. A comparison of hand-writing is never allowed, except in *corroboration* of testimony derived from knowledge of the hand-writing. It is never admitted of itself, to destroy, but to support other testimony. *Norris' Peake's Ev.* 154. *Jackson ex dems* v. *Vaudusen,* 5 *Johns. Rep,* 144. *Vickroy* v. *Skelly,* 14 *Serg. & Rawle,* 372. *Decosta* v. *Pim, Appendix to Peake's Ev.* 42.

3d and 4th bills. The testimony admitted was, that of an *expert* in judging of handwriting. This point is new in Pennsylvania, and that very circumstance is a strong argument against the *necessity* of adopting such a rule of evidence. The ordinary ties which induce many witnesses to speak the truth, will not operate upon the mind of an *expert*—if he falsifies he need not fear detection; for he does not speak of facts, but his own opinion. It would be dan-gerous to *create* such a class of witnesses, who would be operated upon by their own fancied ingenuity or dexterity in detection. The doctrine is repudiated in 2 *Stark. Ev.* 658.

5th bill. Circumstances unconnected with the paper alleged to be forged, is incompetent evidence. *Norris' Peake* 154.

6th bill. It is competent for the court to withdraw illegal evi-dence from the consideration of the jury—and that the evidence was illegal, is argued in the foregoing bills.

7th bill. It had appeared in evidence, that at the time the inven-tory was taken, Mr. *Haldeman,* one of the present plaintiffs, who is also one of the heirs, was present, and saw the balance struck in the testator's bank-book, predicated upon the allowance of the amount of this check to the bank—and the testimony offered and rejected by the court, was for the purpose of establishing the fact, that he had acquiesced in that settlement, by permitting the admi-nistration account of the executors to be settled, without objection; predicated, as to that part of the administration, upon the settle-ment made by Mr. *Coleman,* with the bank several years before, which ought to have had a powerful influence upon the jury.

8th bill. The testimony was not rebutting.

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

9th bill. (To the charge of the court.)

1st, 2d, 3d, and 4th points. The duties of an administrator *de bonis non,* are limited to the management of such goods of the testator or intestate, as have not been administered by the executor or previous administrator, or mixed with his own; and therefore the subject matter of this suit having been acted upon and settled by the executor, the administrator *de bonis non,* has no power over it. 3 *Bac. Ab.* 19. *Grout* v. *Chamberlain,* 4 *Mass.* 611. If the executor erred in that settlement, the heirs may look to him to correct that error as it respects their interest. *Allen* v. *Irwin,* 1 *Serg. & Rawle,* 549. The act of an executor is conclusive upon all persons interested in the estate. *Jacob* v. *Harwood,* 2 *Ves.* 267. *Nugent* v. *Giffard,* 1 *Atk. Rep.* 463. *Moore's Cases,* 494. In *Packman's case,* 6 *Coke* 19, it is decided that the act of an executor, *although fraudulent,* is binding against the second administrator, but it is otherwise as to creditors. If there had been collusion between the bank and *William Coleman,* the executor, or if it had been a mere gift by the latter to the former; the heirs or legatees may pursue the fund into the hands of the bank, but there is no necessity for the interference of the administrator *de bonis non,* for the fund has already been passed upon, administered, by the personal legal representative of the estate. *Petre* v. *Clark,* 11 *Serg. & Rawle,* 377. *Skiner* 143. *Com. Dig.* 271. *title Administrator.* 2 *Eq. Ca. Ab.* 424. If an executor settles a claim of the estate, and takes from the debtor his note for a balance due, the administrator *de bonis non,* can never recover that balance from the executor or his representative. *Wankford* v. *Wankford.* 2 *Salk.* 306. 2 *Ventris,* 562. *Vernon,* 173. Upon the settlement between the bank and the executor, taking the mistake for granted, the bank had and received the money for the use of the executor, and on this gound, the administrator *de bonis non,* cannot recover.

5th point. When the settlement took place between the executor and the bank, each party had a full knowledge of all the facts; and upon that knowledge the executor exercised his discretion and allowed this check to be credited to the bank; and the matter thus rested for four years and upwards, by which the bank was lulled into security, and all hope of detecting the forger and saving itself was gone when this suit was brought;—may not the defendant, under these circumstances *ex equo et bono,* now refuse to pay the money. On this point were cited *Levy* v. *The Bank of the U. States.* 1 *Bin.* 27. *Morris* v. *Turin* 1 *Dal.* 147. *Rapalge* v. *Emory,* 2 *Dal.* 51. Money cannot be recovered from a defendant, which good conscience does not require him to refund. *Willing* v. *Peters,* 12 *Serg. & Rawle,* 177. *Diechman* v. *Northampton Bank.* 1 *Rawle,* 54.

(The Bank of Pennsylvania *v.* Jacob M. Haldeman, and Richard T. Jacobs, administrators *de bonis non*, with the will annexed, of Samuel Jacobs, deceased.)

6th, 7th, 8th and 9th points—have been argued in the first, second and third bills of exception.

There is a misjoinder of counts in the declaration. The promise to pay is the subject matter of the action, upon which the right to recover must depend—the first count lays the promise to have been made by the defendant to *Samuel Jacobs,* in his life time—the second lays it to have been made to his administrators, the present plaintiffs, in 1823. Such counts cannot be joined. 2 *Saund,* 117. *Bennet* v. *Verdeen,* 2 *Ld. Raym.* 841. 1 *Arch. Prac.* 59–60. 2 *Penn'a Prac.* 397. In all cases of promises made to, or by an executor or administrator, after the death of the testator or intestate, the action is personal, and therefore different from an action upon a promise by, or to the testator where the action must be in the representative character. *Grier* v. *Huston,* 8 *Serg. & Rawle,* 402. *Wolfersberger* v. *Bucher* 10 *Serg. & Rawle,* 11–13. The misjoinder is not cured by the verdict. *Stroecker* v. *Grant,* 16 *Serg. & Rawle,* 237.

Suppose the verdict to have been for the defendant, what would be the judgment thereon as respects costs? On the first count the judgment for costs would have been against the estate:—On the second, it would have been against the administrators personally.

*Porter* and *Elmaker,* for defendant in error.

1st. bill. The identity of the checks was a matter of fact for the jury, and the court could not have withheld them on the ground, that *sufficient* evidence had not been given to satisfy the jury that they were the same which the executor had received out of bank. The checks had been in the possession of the plaintiffs in this suit, who could not have been examined. *The Commonwealth* v. *Kinnison,* 4 *Mass,* 646, is a criminal case, wherein strictness is required, and is not applicable to this principle involved in a civil suit. It was alleged by the plaintiffs that the check of the 22d March, 1819, in question, was made in the bank, by tracing the hand-writing of Mr. *Jacobs* from the other checks, hence the importance of letting all the checks go to the jury.

2d bill. The evidence offered, and to which exception was taken, was not matter of opinion derived from a comparison of hand-writing; but was the judgment of the witness, predicated upon his knowledge of the hand-writing of Mr. *Jacobs,* aided by a comparison of the alleged forgery with genuine signatures: being a much stronger and more satisfactory kind of evidence than knowledge without the aid of a refreshed memory. The case of *Vickroy* v. *Kelly,* 14 *Sergt. & Rawle* 372, is that a comparison of hand-writing *alone,* is not evidence in case of a public officer; from which the inference is strong, that if connected, as in this case, with actual knowledge of the hand-writing, it is good evidence. On this point, were cited *Farmers' Bank* v. *Whitehill,* 10 *Serg. & Rawle,* 110.

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs,. administrators *de bonis non,* with the will annexed, of Samuel Jacobs,. deceased.)

*Homer* v. *Wallis,* 11 *Mass.* 309.   But what rendered the evidence peculiarly proper, was that we alleged that the check in question was traced from the other checks.

3d bill.   A person who is an *expert* may be permitted to testify whether a writing is a *traced* hand or original and genuine.   *Lodge* v. *Piper,* 11 *Serg. & Rawle,* 333.   *Hubly* v. *Vanhorn,* 7 *Serg. & Rawle,* 185.   But even if the court of common pleas should have been in error in the admission of this evidence; under the circumstances this court will not reverse the judgment on that ground, for no evidence was given by the plaintiffs in pursuance of their offer, by which the defendant was prejudiced.

4th bill.   The evidence offered was merely to shew the original state of the check of the 21st March, 1819, from which as to the word "March," we alleged the check in controversy was traced.

5th bill.   It would be strange, indeed, if no evidence *dehors* the paper alleged to be forged, would be competent to prove the forgery.   Other evidence may be absolutely conclusive, such as proof that the person whose name is alleged to be forged, was sick,. had his arm broken, was out of the county or was under some other disability; and the circumstance of evidence being clear and satisfactory upon the point of inquiry, is a good reason to conclude that it is legal.

7th bill.   This evidence was irrelevant—there is no mention made, either in the inventory or administration account of the check in question or the money in the bank of Pennsylvania—the inventory was made on the 22d June, 1819, and the settlement with the bank not until the 2d July following.   The evidence would have had a tendency to embarrass, rather than to elucidate the case.

8th bill.   If it was important for the defendant to give in evidence, by Mr. *Ogilby,* that the check in question was paid to a boy; it was equally important for the plaintiffs to prove that Mr. *Ogilby* was mistaken, that it was another check, in favour of another person, that was paid to a boy; which was the evidence offered and given.

9th bill.   (To the charge of the court.)

As to the duties of an administrator *de bonis non,* were cited the *Stat.* 17 *Chas. II.* which is in force in Pennsylvania.   *Turner* v. *Davies,* 2 *Saun.* 149.   3 *Bac. Ab.* 20.   When an executor actually administers a fund or part of the assetts of the estate, the administrator *de bonis non* would afterwards have nothing to do with it; but the money now claimed by the plaintiffs never was administered by the executors; on the contrary, they disclaimed having any thing to do with it, " unless the heirs would furnish them proof to establish their right to recover it," which was not done.   Cer-

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

tainly, if the heirs had furnished that proof to the executors at any time before they went out of office, they could have maintained the action, and if the right of action existed in the executors when they went out of office, it survives to the administrators *de bonis non.* An executor; having in his possession a bond due to his *testator,* demands the amount from the obligor, who produces the receipt of the obligee in full, with which the executor is satisfied, and so expresses himself: can it be, that, after the death or resignation of the executor, the administrator *de bonis non,* upon the discovery that the recipt is a forgery, cannot sustain a suit upon the bond? That case and the one before the court seem to be parallel as respects this point. If then the facts turn out to be such, as that the money is recoverable from the bank, who but the administrator *de bonis non* can sustain the action?—not the heirs, for if the estate should turn out to be insolvent they should not have the money—and not the creditors, for it could not be determined which of them would be entitled. If this suit is not rightly brought, it follows that the estate of Mr. *Jacobs* is entitled to the money, and has no remedy to recover it.

10th error. The money recovered upon either of the counts in the declaration would be assets of the estate; they are therefore rightly joined. *Malin* v. *Bull,* 13 *Serg. & Rawle,* 441. *Stevens* v. *Gregg,* 10 *Serg. & Rawle,* 234. *Strohecker* v. *Grant,* 16 *Serg. & Rawle,* 237.

The opinion of the court was delivered by

SMITH, J.—The defendants in error, who were plaintiffs below, brought an action of assumpsit, for money had and received, against the plaintiffs in error. The cause was tried on the pleas of non-assumpsit, and payment with leave to give the special matters in evidence. On the trial, various bills of exceptions were taken by the defendants, to the admission and rejection of testimony, and to the charge of the court. It became necessary to decide whether a certain paper, purporting to be a check, on the office of discount and deposit for two thousand five hundred dollars, dated the 22d of March, 1819, signed "*Samuel Jacobs*," payable to himself or bearer, and which was actually paid at the office, was a genuine check or not. The defendants in error alleged that this paper was a forgery, and to prove their allegation, it was necessary to establish its *identity;* or, in other words, that the paper offered in evidence was the same which was received and paid in bank. Mr. *Ogilby*, cashier of the bank, declares that the bank paid the check to a little boy, on the 29th March, 1819. On Thursday, the 25th of March, 1819, in the afternoon, *Samuel Jacobs* was violently attacked with a cramp in his stomach, took to his room, and did not

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, Administrators *de bonis non*, with the will annexed, of Samuel Jacobs, deceased.)

leave it, until he was a corpse—he died on the 14th of April, 1819. On the 5th of June following, *William Coleman*, one of the executors of *Samuel Jacobs*, deceased, took his bank-book to the bank to ascertain the balance due him; the cashier settled the book, and returned it to him, together with this and other checks. These checks were afterwards given to *Jacob M. Haldeman*, and by him to others. After the plaintiffs had proved, by Mr. *Ogilby* the cashier, *Samuel Jacobs'* bank-book, the various entries of credits in it, (enumerated all in the state of the case,) the settlement made in it on the 5th of June, 1819, and that he, the cashier, presumed the checks produced to be the same checks he had given up to *William Coleman*, that he knew nothing to the contrary, but *believed* the checks to be the same, and that he had filled up the one of the 1st of March, 1819, for two thousand dollars, at the counter of the bank—they offered to read to the jury the above stated entries in the bank-book and the checks aforesaid. To this offer, so far as respected the reading of the checks to the jury, the defendant's counsel objected. The court overruled the objection, and permitted the whole to be read—and this forms the *first* bill of exceptions. It is contended, that the papers admitted, had not been sufficiently *identified*, that the question was whether the check was a forged one or not, and that therefore it could not be read to the jury, unless all were called in whose hands it had been, nor unless the witness had marked the check before he had parted with it. It is true the question was whether the check was forged, but that question was for the jury, and therefore the evidence offered was clearly admissible to establish the point of indentity, which was involved in it. Whether it was satisfactory and sufficient for that purpose, it was for the jury to decide; but being relevant, the court could not do otherwise than refer it to them, with the check, in order that they might exercise their judgments upon that point, as well as upon the principal question. We are of opinion, that the evidence was sufficient to entitle the plaintiffs to read the checks to the jury. After the plaintiffs had read to the jury, the several checks, six in number, including the check alleged to have been forged; and had proved by *John Forster*, that he had seen *Samuel Jacobs* write frequently—draw checks in bank; that from the opportunity which had been given to him to examine this check, (having looked again at all the six checks,) he believed no part of it to be in the hand-writing of *Samuel Jacobs*, and also, that he had been in the habit of corresponding for many years with him on business—and had proved by *Henry Alward*, that he had seen the late *Samuel Jacobs* write, and that from the knowledge he had of his hand-writing, and taking every part of the

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

check, he would say it was not his hand, and taking the whole check as it appeared, date, filling up, and signature, he would say it was not his hand-writing—and had proved by *Joseph Wallace,* that he had often seen *Samuel Jacobs* write, had dealt with him during the years 1812, 1813 and 1814, and received many letters from him, and seen him sign receipts for money paid, and that from his knowledge of the hand-writing of *Samuel Jacobs,* (and after looking at the check of 22d of March, 1819,) taking the whole of it together, he believed it not genuine; the plaintiffs offered to ask Mr. *Forster,* " from your knowledge of the hand-writing of *Samuel Jacobs,* and from comparing the check of March 22d, 1819, with those parts of the check of January 20th, January 21st, February 4th, March the 1st, and March 21st, 1819, which you have stated to be in his hand-writing, what is your opinion and belief as to the signature and body of the check of March 22d, 1819, being in the hand-writing of *Samuel Jacobs.*" To the offer so made, the defendant's counsel objected, but the court allowed the question to be put, and this on the *second* bill of exceptions, is assigned for error. The question was properly allowed to be asked, according to the opinion of this court, in the case of the *Farmers' Bank of Lancaster* v. *Whitehill,* 10 *Serg. & Rawle,* 110, in which it was decided, that comparison of hand-writing was admissible in evidence in civil cases, where it was in corroboration of other evidence, which tended strongly to support the fact in dispute. Three witnesses, Mr. *Forster* being one, had declared the check not to be the hand-writing of *Samuel Jacobs;* the proposed offer was not to establish solely from comparison of hands, that the check was a forgery, but in confirmation of other testimony already received, strongly tending to the same point, to show that the signature and body of the check of the 22d March, 1819, was not the hand-writing of *Samuel Jacobs.* Under such circumstances then, I apprehend, it was competent evidence to go to the jury, and after the opinion and belief of the witness was known, for him to compare the contested signature with other writings admitted to be genuine. It would seem to me, that where a witness has seen the person write, and declares he knows his writing, he may compare it with writings, which he has seen the person write, or which are admitted he wrote, and he may give his opinion and belief on the comparison, at least such testimony, may go to the jury, who, and they only, are to compare and decide whether the witness is correct or not as to the writing in controversy. The court below then were right in permitting the question to be asked.

I come to the *third* bill of exceptions. After the court had allowed the check to be thus compared with other genuine checks,

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

and the jury to hear the opinion and belief of Mr. *Forster* in relation to it, the counsel for the plaintiffs proposed to go a step further, and to prove " that *John Eberman* is, and has been cashier of the Farmer's Bank of Lancaster for twelve years—that *William White* was cashier of the Lancaster Bank for seven years, prior to October, 1824—that *John Schmidt* is, and has been cashier of the York Bank for ten years; and that the said *Eberman, White* and *Schmidt* are, and have been, for the said number of years, experienced and skilled in the examination of bank notes, checks and other writings, with a view, and for the purpose of detecting forgeries, and that in their opinion and belief, the part of the check of March 22d, 1819, which is in writing, is written in an imitated character or traced hand." And this the court admitted them to prove, though objected to by the defendant's counsel. It was, in fact, permitting *experts,* as they are called, who never saw Mr. *Jacobs* write, from their professed knowledge or skill in hand-writing, to prove solely, from comparison, whether what purported to be the hand-writing of Mr. *Jacobs* in the disputed check was counterfeit or not. This cannot lawfully be done. It would have been error had the witnesses actually proved what was proposed to be proved by them. This opinion is fortified by the decision in *Lodge and another* v. *Phipher and Lloyd,* 11 Serg, & *Rawle,* 333. The question there was, whether a receipt in the name of *Reuben Haines* was forged or not; it was alleged to have been forged by a certain *William Shaw,* deceased. The court below permitted *Israel Pleasants,* on the ground of his being *an expert* in the examination of writings, to give *his opinion,* whether the receipt, and the papers proved to have been written by *Shaw,* were the same hand-writing. This, says the late Chief Justice, was giving very great weight to matter of opinion, greater, I think, than it was entitled to, for *Pleasants* did not pretend to know any thing of the hand-writing of *Haines* or *Shaw,* nor did he form any opinion, but from the naked comparison of hands. The judgment was therefore reversed. The case under consideration, up to the time of this offer, had been placed before the jury on the evidence of those who could legally give some direct testimony, and on legal proof by comparison of this check with the others. But if witnesses were to be called in, and asked on oath, what conclusions they would draw, it would, in fact, be adding so many men to the jury, in other words, it would be permitting others to advise the jury what verdict they should render; it would not be trying the cause by *twelve* men returned by the sheriff drawn and sworn, but by them, together with as many others as a party could find, who would swear that the evidence was or was not satisfactory to their minds. It appears, however, that when the witnesses were examined, they could not, and did

not prove what was proposed; for *Eberman* testified, that from the appearance of the check, he would not say that it was imitated; and *Schmidt* that he would not undertake to say, whether it was a fair or a traced hand. *White* was not called. So that it is evident the defendants suffered no injury from this decision of the District Court. Now in *Allen* v. *Rostain,* 11 *Serg. & Rawle,* 362. It is said to be a general and well known principle, that one shall not assign that for error, from which he has suffered no injury, for the administration of justice is not promoted by reversing a judgment for an error by which no injury has been sustained. However improper, therefore, the proposed testimony would have been, yet not being given, the opinion of the court below, as to its admissibility, cannot be assigned for error; nor can the judgment on this ground be reversed.

As to the error assigned in the *fourth* bill of exceptions; the plaintiffs offered to prove on the trial the actual state of the check of the 21st of March, 1819, in the beginning of the year 1824—that at that time, in the word "March," the letter "h" had a singular turn at the end of it, that it was then touched with a penknife to ascertain whether it was ink or some other substance which adhered to it, and on this touch it came off, the mark of which being still visible on the paper; and that the said mark was precisely similar to the mark at the end of the "h" in the word "March," on the check of the 22d of March, 1819, for two thousand dollars. In the admission of this proof I cannot perceive any error. These circumstances conduced to establish the forgery, and were therefore properly laid before the jury.

The *fifth* error assigned demands only a passing remark. The plaintiffs having given proof of Mr. *Jacobs'* money concerns and payments, that he was a man of great accuracy in regard to his money, both as to receiving and paying it out, and that no traces could be found of having paid away this money, offered to prove by *Christian Brubaker,* that in the winter or spring of 1819, as executor of one *Keyser,* he sold a plantation to *Samuel Jacobs* for four thousand dollars, payable on the 1st of April, 1819, that the witness wanted money to loan to his brother, and went to Mr. *Jacobs,* and received, *in advance,* one thousand dollars, on the 22d of March, 1819, by a check on the same bank at Lancaster, offered to be shown, and erroneously dated the 21st of March, 1819; that soon after that Mr. *Jacobs* took sick, and witness never saw him again; that witness went to his house, on the 1st of April, 1819, but found him so sick that he did not see him, nor ask to see him, that the balance of the money due the witness was paid in cash by *William Coleman* after Mr. *Jacobs'* death." Why this was objected to, I am at a loss to conceive. It was evidence, even if it

(The Bank of Pennnsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

weighed but a feather, in the cause; when, however, it is considered, that it was known Mr. *Jacobs* had bought from *Christian Brubaker* land for four thousand dollars, to be paid on the 1st of April, 1819, and that he had actually paid him in advance one thousand dollars, on the 22d of March, by a check on the same bank, it was reasonable to suppose in the absence of proof to the contrary, that he drew the check of the 22d of March, 1819, for two thousand five hundred dollars, for the balance of *Brubaker's* claim, or in order to be prepared to pay him the residue of the four thousand dollars on the 1st of April following, according to their contract, and that; therefore, the money might have been drawn by himself for this purpose. Now to do away all idea of the kind, the plaintiffs offered to prove, that the balance of the purchase money was not paid by Mr. *Jacobs,* but by Mr. *William Coleman,* after Mr. *Jacobs'* death, and that although Mr. *Brubaker* had called at the office of Mr. *Jacobs* for it, on the 1st of April, yet he did not then receive it, on account of Mr. *Jacobs'* sickness, and consequent inability to transact business. Viewing the testimony in this light, I think it was correctly admitted.

The *sixth* error has, I think, been abandoned. If not, as it is a mere repetition of all the previous alleged errors, on which the court had passed their opinion, and brings up no new matter, it need not again be considered.

I proceed then to the consideration of the *seventh* error. After the plaintiffs had rested their cause, the *defendants,* on their part, proved by *Joseph Ogilby,* that on the 29th March, 1819, a check, (the one in question,) drawn by *Samuel Jacobs,* dated the 22d of March, 1819, payable to himself or bearer, for two thousand five hundred dollars, was presented by a boy, and paid by Mr. *Ogilby* to him at the bank; and that on the 5th of June following, *William Coleman* brought Mr. *Jacobs'* bank-book to the bank, and had the balance due to him struck, or settled by Mr. *Ogilby,* who returned Mr. *Coleman* the checks set down in it; that on the 2d of July next after, Mr. *Coleman* brought the bank-book and checks to the bank, and told Mr. *Ogilby* some of Mr. *Jacobs'* heirs doubted the check of two thousand five hundred dollars, and thought it not genuine, that he thereupon examined it carefully, thought it was Mr. *Jacobs'* hand-writing, and still thought so; that Mr. *Coleman* was of the same opinion, and said the heirs wished him to bring suit against the bank, to recover the money, but that he would not do it, unless they could produce some proof to him;—that Mr. *Coleman* took the book and checks and went away—that on the same 2d of July, the balance to the credit of *Samuel Jacobs* was two thousand five hundred and eighty-seven dollars and sixty-nine cents, that on that day they settled the book, and transferred the balance to the

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

account of *William* and *James Coleman,* as executors of *Samuel Jacobs,* deceased. The defendants also gave in evidence the correspondence between *Thomas Elder,* on behalf of the heirs, and the officers of the bank, commencing on the 20th of February, and ending on the 25th of July, 1821; and then offered, after the evidence already stated, the *inventory,* exhibited on the 22d of May, 1819, by *William* and *James Coleman,* executors of *Samuel Jacobs,* deceased, to the Register of the county of Lebanon, and also the *administration account* of the same executors, exhibited the 1st of December, 1820, and finally passed and confirmed on the 3d of January, 1821, and in connection with them *a receipt and acquittance* from *Jacob M. Haldeman* and *Richard T. Jacobs,* administrators *de bonis non,* then appointed, bearing date the 3d of January, 1821, the said receipt and acquittance having been given by the said administrators *be bonis non* to the aforesaid executors, as appeared by the same papers; to all which the plaintiffs counsel objected, and were sustained in their objection by the court, who overruled the said testimony thus offered. The defendants in error contend, that these papers, being wholly irrelevant to the matter in issue, and only calculated to embarrass the cause, the court were right in rejecting them. In this I agree with them, for neither to the court below, nor to this court has *any* the least relevancy been shown. It cannot be pretended, that any of the papers show on their face, that the two thousand five hundred dollars were included, or mentioned in them, nor can any thing, relative to the bank, or this money be shown from the most minute examination of them. The plaintiffs in error, admit themselves, that the two thousand five hundred dollars, were not included in the inventory, administration account, or receipt, as their whole defence was rested on the ground that *William Coleman,* the executor did not receive the two thousand five hundred dollars from the bank, but allowed that sum to the bank on the settlement of the bank-book on the 5th of June, 1819. Again the third and fifth points put to the court by the plaintiffs in error *aver* distinctly, that the two thousand five hundred dollars were not received by *William Coleman,* and the fifth point says, that the money " *was voluntarily settled for and paid by the executors, of Samuel Jacobs, deceased, to the present defendants.*" How then, on the defendants own grounds, could the two thousand five hundred dollars have been included in the inventory, administration account, or receipt? The receipt is merely a receipt for *so much* as was in the executor's hands. If it be said, that these papers were evidence to show that the executors *had settled an account* of some kind, my answer is, that this was shown fully, and admitted by the plaintiffs below, *by the letters of administration de bonis non,* given in evidence by

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

them, The recitals in those letters of administration must be taken to be true, and show that the executors *had settled an account that this account had been approved by the proper court, and that they had been duly dismissed.* And this appears fully from the fourth point put by the defendants below to the court. Indeed the answer of the court to the defendant's fourth point, is a complete answer to the 7th bill of exceptions, about the rejection of these papers. The court in their answer say, " That the recitals in the letters of administration *de bonis non,* given in evidence by the plaintiffs, must be taken to be true. They show that before the granting of them, the executors had settled their account, as stated in this point. The presumption of law is, that the account so settled by the executors, contained a full and perfect account of all the assets of the deceased, which had come to their hands at the time they were discharged from their trust; and that it was duly settled and approved by the proper authority. Whether the settling of the administration account by the executors, as stated in this point, was an administration of the part of the assets of the deceased now in question in this suit, depends on the fact whether the two thousand five hundred dollars mentioned in the check in question, had previously to that time come to the hands of the executors. If they had received the money in question from the bank, the plaintiffs could not recover in this suit, whether they charged themselves with it in their administration account or not. If they charged themselves with it in their administration account settled by them, they have administered on it, and the plaintiffs cannot recover, whether they have received it of the bank or not. If they neither received it from the bank, nor charged themselves with it in their account, then the settling of an account, as mentioned in this point, would not be an administration on this part of the assets of the deceased, and the plaintiffs are not, on that account, prevented from recovering." The acknowleged ground of defence, both in the court below, and in this court, shows that these papers could not have been in any way material or relevant, and therefore, there was no error in rejecting them.

A word as to the eighth bill of exceptions will suffice. The defendants had proved by Mr. *Ogilby,* that the check of two thousand five hundred dollars had been paid by him to a boy or young lad—the plaintiffs offered, (and as I understand it, in order to show that Mr. *Ogilby* was, or might be mistaken, in his recollection as to this,) to prove that *Christian Brubaker* gave his check for one thousand dollars, dated, (though erroneously,) the 21st of March, instead of the 22d of March, 1819, to his son, *Benjamin Brubaker,* who came to Lancaster to draw the money sometime the latter end of March or beginning of April, 1819, and when he came to Lan-

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non*, with the will annexed, of Samuel Jacobs, deceased.)

caster, he thought there might be some difficulty in getting the money at bank, and therefore went to *Ober & Kline's* store, and requested Mr. *Kline* to send a boy, (then about twelve or fourteen years of age,) to the bank for the money, who returned in a few minutes with the one thousand dollars, the amount of the check. As the evidence was intended to show a mistake in the recollection of Mr. *Ogilby*, or to correct the mistake, if any, it was properly offered; nor was there any error in receiving it for that purpose.

Having thus disposed of all the errors assigned respecting the admission and rejection of evidence, I will proceed to consider the errors assigned in the answers of the court to the points proposed by the counsel for the defendants. These were nine in number, and the court were requested to reduce their answers to writing and file them of record. This the court did, and in my opinion, answered fully and very satisfactorily, each and every point. The first, second and third points, all relate to one subject, to wit, on whom the settlement of the estate of persons dying testate or intestate devolves, and also whether an administrator *de bonis non*, is confined to the administration of that portion of the estate which was left *unadministered* by his predecessors. The court below answered that the settlement of such estates belongs to, and devolves on the executors, and the administrator *de bonis non*, is confined to the estate unadministered by them. I subscribe entirely to the correctness of the answers of these three points. If an executor settles an account between the decedent and a third person, and then introduces it into his administration account, the administrator *de bonis non* has nothing to do with the transaction, because, the executor having once received a credit for it, (or if he be charged with it,) it is to be considered as belonging to that portion of the estate which has been administered by him; but if on the other hand, the executor has omitted to make such settlement, or left it out of his administration account for any cause, then the other may, indeed must, proceed to collect or pay, in other words, administer the claim or demand. If *William Coleman* and his co-executor administered the two thousand five hundred dollars, then the administrators *de bonis non*, could not interfere with, nor touch the matter. And so, I understand, the court below stated the law to the jury; at the same time leaving the facts arising on the evidence on these points, entirely to the decision of the jury. In this there was no error.

In considering the seventh bill of exceptions I have already said, that the answer of the court to the fourth point was correct, and it was therefore only necessary to declare, that there is no cause for reversing the judgment on this ground.

The answer of the court to the *fifth* point was correct. It is

(The Bank of Pennsylvania *v.* Jacob M. Haldeman and Richard T. Jacobs, administrators *de bonis non,* with the will annexed, of Samuel Jacobs, deceased.)

true where money is paid to one, without fraud or unfair practices, the party who receives it, may in good faith and conscience retain it, although he could not have recovered it by law. The law is so laid down in innumerable cases; but here there was no such payment to the bank as has been stated, in considering the seventh bill of exceptions. The bank could not enforce against Mr. *Jacobs* the payment of this check, and as it was not actually paid to the bank, nor according to the opinion of the jury, who had to decide the fact, allowed in any settlement, to the bank, I think the bank cannot, in equity and good conscience, retain the money, and that this case does not come within the decisions cited by the counsel for the plaintiffs in error.

The sixth, seventh and eighth answers have been considered and declared not to be erroneous. They need not again be considered. This then disposes of all objections made to the charge of the court. One more error remains to be adverted to. It is contended that there is a misjoinder of counts in the declaration filed in the cause, and that the general verdict rendered thereon is, therefore, erroneous. The first count lays the indebtedness to the testator *Samuel Jacobs,* and a promise to him, in his life-time, to pay him the sum of money. The second count lays the indebtedness to the administrators, and the promise to the administrators to pay them, &c. There is a general judgment on both counts. I should not be disposed to reverse the judgment on this ground, after a full and fair trial on the merits, unless it were clearly required by some principle of undoubted applicability; but there is no such principle; on the contrary, this court, in the case of *Stevens* v. *Gregg's Administratrix,* 10 *Serg. & Rawle,* 234, has in fact, decided that counts like these may be joined, and has given the true guide in the following plain and intelligible direction, that " wherever the funds to which the money and the costs are to be applied, or out of which the costs are to be paid are the same, and the money when recovered, would be assets, then the counts may be joined." See 16 *Serg. & Rawle,* 242, to the same point. In this case the money, if recovered on either count, is assets, the plaintiffs look for nothing in their own individual right, but declare in their representative character, and the counts may, therefore, be legally joined. The judgment must, in the opinion of a majority of the court, be affirmed.

Judgment affirmed.