The opinion of the court was delivered by
Duncan, J.
I do not perceive the force of the objection to the order of time in which the rejected evidence was offered. The plaintiff had given some evidence, sufficient to entitle him to read the note to- the jury, and to put it into their hands, but he might continue to strengthen his case by other evidence. He might consider it the safest course to prove as fully as he could, the execution of the note, before he delivered it to the jury. If the administration account rendered by the defendant, with his acknowledged signature, was competent for the purpose for which it was offered, to compare the signature of the note with the conceded signature of the account, he might first give in evidence the account and then deliver over both papers to the jury, to compare and judge of. So that the only question is, was comparison of hands legal evidence either of itself, or to corroborate other evidence given in-the cause.
I do not, however, deem it proper, to go further than the case requires, and am of opi.nion that after the evidence given by the plaintiff, it was proper to receive in evidence the handwriting of the defendant to this account rendered by him on oath, and admitted to-be his, his name subscribed by himself, to enable the jury to compare the handwritingof the defendant. It is unnecessary, to advert to' the English authorities, as we have a common law of our own. Yet I have taken some pains to examine them, and there are very great names, judges distinguished, authors of the highest character, to-support the position, that similitude of handwriting, with other concurrent testimony, isin civil cases, evidence that both are of the same handwriting. Lord Holt, Gilbert, Hawkins, Blackstone, Lord Camden, Buller, and Lord Kenyon, and all the judges of the King’s Bench in Goodtitle ex dem. Revelt v. Braham, and Lord Kenyon again in Ashbrook v. Roach, 1 Esp. 451, where the defence to a bill of exchange was forgery, and he allowed the jury to-' decide on comparison of hands, by comparing the bill in question: with other acceptances of the defendant, though he appears after-wards to have been of another opinion. The recent doctrine in Westminster Hall excludes comparison of hands, even in civil ca= *112 ses, arid the reason assigned for the rejection is, that unless a jury could read, they would be unable to institute a'eomparison, or judge of a supposed resemblance. The foundation fails, for there are few, if any instances,' of a jury so illiterate, as to be incapable of reading, and the presumption' of law is always, that a jury can read, and Can distinguish, for all Writings given in evidence are to be taken out with them; and if it were not so, the rule ought not to be a general one, but proceed on a previous inquiry, “.can the jury read,” and this must be decided, by putting a writing into the hands' of the jurors, and a' proclamation by the clerk, as in a prayer of benefit of clergy, ¿ege't út clericus. The reason is- a bad one, and is so considered by a very able writer on the law of evidence, Phillips, 428, who adds another réasori, without approving of it, “that the writings which may be produced as specimens, may be selected by an interested party to serve a present purpose,- are open to suspicion, and liable1 to impeachment of contrivance.” But if this were a reason for rej'eet.ing evidence, there is constantly evidence open to the same objection. Other specimens might be'exhibited by the opposite1 party. It is in my view, more satisfactory to submit a genuine paper, as a standard, and let the jury compare that with the paper in question,- and judge of the similitude, than the evidence continually received of allowing a* witness who has seen the party write once, to compare the disputed paper with the feeble impression and transient view the writing may have made in his memory. This is by no- means so well calculated to ascertain the truth, the object of all evidence, as to suffer the jury to1 compare the paper with writings proved to be authentic, present in court, and open for inspection. To show this, there is a remarkable case, Osborne v. Hosier, in 6 Mod. 147. One of the subscribing witnesses on the issue of non est factum, gave full evidence of sealing and delivery.. The other swdre, it was very like his hand, but not his. The reputation of both was good, and Hoit, C. J. ordered them to write their names, and thereupon left it to the jury, who found for the plaintiff.
But whatever may be the law of England, it is the received- and common law of Pennsylvania,, to receive such- evidence in civil cases, after other evidence has been given in support of the writing, and this was judicially and solemnly determined. M‘Corkle v. Binns, 5 Binney, 349. Such is the1 law of Massachusetts. 11 Mass. 312; and in Connecticut, 1 Root, 467.
Other evidence had been given, Mr. Mathiot, who had seen the witness write, and judging from a signature which he had seen him make, swears, that he believes the signature to the note to be his. And so the other witness, MlClure, who swears he had seen him write two or three times, that he writes such a hand, he believes it to be like his handwriting; it was likely to be his; he believes it might be his handwriting, though he cannot swear that it is his.
Witnesses who are examined to prove handwriting generally* *113 speak in this hesitating way, but I do not see how any cautious witness, who had only seen a party write, once, could speak with more confidence than Mathiot did. The other witness speaks with more hesitancy, but evidences his belief, “ he writes such a hand, he believes it to be like his handwriting, it was likely to be his, he believes it might be his handwriting.”- On such evidence the fact would go to the jury, and if there was no other evidence, none to create a doubt of the accuracy of the belief of the witnesses, no proof by the defendant, by those acquainted more intimately with his handwriting, I would pause if the jury found for the plaintiff, before I would say, that the verdict was so much against the weight of evidence that the court ought to grant a new trial. There may be particularity in the handwriting, so distinct and convincing as to leave the mind in no doubt on examining that which was admitted to be the genuine handwriting, with thedisputed instrument, as to its being authentic or spurious, or the resemblance so weak, as not to satis fy the mind. The jury inspect, examine, they would not be bound to give a verdict according to the opinion of any witness, against their own senses. And if the witnesses are equal in numbers, in charac* ter, in intelligence, and means of information, there the jury must decide by their own comparison, trust their own eyes, and draw their own conclusions by comparing the standards, the handwriting acknowledged, with the contested paper, and so it was decided in the case in 6 Mod., and so it only could be decided. This is the strongest case possible to let in this proof. The standard with which the comparison is to be made, is often itself a matter of some doubt. The authenticity of its signature is first to be decided, before the comparison is made. But here the standard in incontestible, and is admitted.
Judgment reversed and venire facias de nevo awarded-
F VO.li» X,