## Callan *against* Gaylord.

Comparison of handwriting is evidence in a suit for a libel, where it goes in corroboration of other evidence tending strongly to prove the handwriting of the libel to be that of the defendant.

Depositing a libel (which was in the form of an anonymous letter) in the post-office, where it was mailed and despatched, together with the fact of its production by the plaintiff on the trial, is sufficient evidence of its publication, without the oath of the person to whom it was addressed, who, living out of the state, was out of the jurisdiction of the court.

ERROR to the district court of *Alleghany* county.

This was an action on the case for a libel brought by Thomas G. Gaylord, the defendant in error, against the plaintiff in error, James Callan. The plaintiff below complained that Callan (having acquired a knowledge of his private affairs from his employment as

[Callan v. Gaylord.]

book-keeper in his house) published an anonymous libel, in the form of a letter, addressed to a merchant in Boston, injuriously affecting the plaintiff's character and business as a merchant in the city of Pittsburgh.

After the testimony of several witnesses, who thought that, although the handwriting in the libel was disguised, it nevertheless appeared to be that of the defendant, proof was given of his malignant feelings towards the plaintiff, as displayed by frequent expressions like those contained in the libel.

The testimony of Joseph S. Hastings of Boston, to whom the letter was addressed, had not been procured, and the only additional evidence of publication resulted from the facts of the letter being mailed and stamped with the Pittsburgh postmark, *together* with the testimony of the postmaster that it had been despatched, and that it was produced upon the trial by the plaintiff. The defendant objected to the admission of the letter in evidence, on the ground that the publication had not been proved. The objection was overruled and exception taken.

The plaintiff produced his account books, proved, by persons acquainted with the defendant's handwriting, to be chiefly in the handwriting of the defendant, the parts written by him being particularly pointed out. They were then offered in evidence for the purpose of comparing the handwriting with that in the alleged libel. The defendant's counsel objected, because the books were not admitted to be in the defendant's handwriting, and that the mode of proof by comparison was insufficient and illegal in the case. The objection was overruled and the books admitted by the court; to which the defendant's counsel excepted.

The following point was submitted by the defendant's counsel to the court below.

That the facts of the letter (containing the alleged libel) being in the plaintiff's possession and produced by the counsel on the trial; of the Pittsburgh postmark being proved by Mr Eichbaum, he having no doubt it was made by him in the postoffice; even supposing the letter written by the defendant, are not legal evidence of publication, nor a ground from which an inference of publication can be legally drawn.

The court below charged the jury on this point as follows.

If an anonymous letter, containing libellous matter of another, be proved to be in the handwriting of the defendant and in the postoffice, directed to a third person, it is *prima facie* evidence that the person writing it deposited it there for the purpose of sending it to the person to whom it is addressed; and in the absence of any proof that the letter was withdrawn by the defendant, the jury will be justified in presuming that the letter went to its place of destination, and in considering the facts of such a letter being put into the postoffice, directed to a third person, sufficient evidence of publication, without any proof by the person to whom it was addressed; that he

[Callan v. Gaylord.]

received and read it.　Where a libellous letter in the handwriting of the defendant has been put into the mail, directed to a third person, the possession of the letter by the plaintiff is some evidence of publication, on which a suit may be brought.

The opinion of the court was excepted to by the counsel of the defendant below, and is here assigned for error.　Error is also assigned to the admission of the plaintiff's account books in evidence.

*W. H. Lowrie* and *Forward,* for plaintiff in error.

The publication ought to have been proved by Hastings.　The case relied upon by the other side in the court below, was that in 1 *Lord Raym.* 416, 417.　But there, there was proof that the libel was published.　2 *Stark. Ev.* 848, cited Ring *v.* Watson, 1 *Camp. N. P.* 215, where the receipt of the letter was proved, and the postmark was offered to show the venue.　7 *East* 69; 2 *Eng. Com. Law Rep.* 358—386.　In all these cases the publication was distinctly proved, and the only question was that of venue.　There the letter, if published at all, was published in Boston, and positive evidence was within the reach of the court.　Notwithstanding this, secondary evidence of publication was admitted.

On the other point, comparison of handwriting is fallacious evidence, and particularly here where the hand was disguised; and one witness swore positively that the body of the letter was not in Callan's handwriting.　The principle is, that papers *admitted* may go in comparison, but not papers *proved.*　Farmer's Bank of Lancaster *v.* Whitehill, 10 *Serg. & Rawle* 110.

*Watts* and *Fetterman,* for defendant in error, cited, M'Corkle *v.* Binns, 5 *Binn.* 349; Ball *v.* Hughes, 10 *Mass.* 39; 4 *Barn. & Ald.* 95; Metcalf *v.* Markham, 3 *Term Rep.* 652; 2 *Camp. N. P.* 506; 7 *East* 69; 11 *Mass.* 309; 2 *Stark. Ev.* 653, note 4; 1 *Gall.* 175.

The opinion of the Court was delivered by

Gibson, C. J.—Nothing has been more fluctuating than the rule of competency in respect to evidence of handwriting by comparison. In England it is broadly laid down that such evidence is inadmissible, though the rule does not seem to be without its exceptions even there.　In some of the United States it has no prohibitory effect at all; and in some, if not all of the rest, it exists with material qualifications.　In Pennsylvania, it may be considered as settled by Vickroy *v.* Skelly, 14 *Serg. & Rawle* 372, that naked, unassisted comparison of hands is inadmissible, where the question is not on the writing of a public officer so long dead as to preclude the production of any thing better.　But its competency for purposes of corroboration seems to be established in both civil and criminal cases. In the Farmer's Bank *v.* Whitehill, 10 *Serg. & Rawle* 110, it was received to corroborate the belief of two witnesses who had seen the party write, but could not pronounce positively as to the fact; and in

M'Corkle *v.* Binns, 5 *Binn.* 349, the principle was extended to the
types and devices of a newspaper. Such being the rule in civil ac-
tions, it is not easy to understand how a doubt could be entertained
of its propriety in criminal prosecutions. Any distinction that may
have been taken on that head, seems to be abandoned both here and
in Westminster Hall, where this, as well as perhaps every other rule
which has regard to the quality and not the quantity of the proof, is
the same in all the courts of common law. In M'Kee's case, *Addi-
son* 38, comparison of hands was resorted to on the trial of an indict-
ment for forging a writing found in the prisoner's possession; and the
competency of it in criminal cases, subject to the restriction already
indicated, is reluctantly admitted by Mr Justice Duncan delivering
the opinion of the court in the Commonwealth *v.* Smith, 6 *Serg. &
Rawle* 571. My experience furnishes no instance in which notes
uttered by a counterfeiter, or found on his person, were not compared
with genuine notes of the same bank. Such then being the rule,
how does the case stand upon it? The plaintiff had proved that the
libellous letter, though in a feigned hand, appeared in the judgment
of the witnesses to be written by the defendant; that it was post-
marked with the place of his residence, in the letters and figures of
the postmaster there; that he had called the plaintiff a damned
rascal; accused him of having defrauded one of his creditors in New
York, and said that no one would fill an order for him. Surely after
having laid so broad a foundation, the plaintiff's books, written in
part by the defendant, were proper to corroborate the inference of his
being the writer of an anonymous letter calculated to injure the
plaintiff, with another of his creditors in Boston.

The evidence of publication was amply sufficient to warrant the
verdict. The fact that the letter was put into the postoffice, raised
a natural presumption, founded in common experience, that it reach-
ed its destination by the regular operations of the mail. The objec-
tion is, that this presumption is inferior to the oath of the party to
whom the letter was addressed. Granting it to be so, yet as he was
beyond the limits of the jurisdiction, it was the best evidence in the
plaintiff's power; for though foreign testimony may, for the most
part, be procured by a commission, yet as a foreign witness is not
bound to testify, his compliance with the *mandate is* not of right, but
of grace; and evidence is not to be deemed secondary where better
is not within the compass of the party's means. But aside from this,
the depositing of the letter in the postoffice would be a publication
of it though it never came to the hands of him for whom it was in-
tended, if it came to those of any one else, because a wrongdoer is
answerable for all the consequences of his acts. It was proved to
have been put into the postoffice by some one; and that it was taken
out by some one, is shown by the production of it at the trial: it
consequently owes its publicity to the writer.

Judgment affirmed.