'[PHILADELPHIA, FEBRUARY 20th, 1841.]

BAKER *against* HAINES.

IN ERROR.

6 Wh 284
21 SC ²329

1. The doctrine in this state is, that mere unaided comparison of hands is not in general admissible. But after evidence has been given in support of a writing, it may be corroborated by comparing the writing in question with a writing, concerning which there is no doubt.

2. To authorise the admission of the writing offered as a test or standard, nothing short of evidence by a person who saw the party write the paper, or of an admission by such party of its being genuine, or evidence of equal authority, is sufficient.

ERROR to the District Court for the City and County of Philadelphia.

This was an action on the case, brought by John Haines against

Joseph Baker, to recover damages for an alleged libel in the form of a letter addressed to Dr. George Uhler, as follows:

" Dr. G. Uhler. Dear Sir,

If you go to John Haines's cellar, you will find twenty pigs lead belonging to you. One horse brought him a load of dirt, but it took two to haul the lead to his cellar; and then call on Robert Morrell, living right opposite, in one of Branch Green's houses; he will tell you, as he does other people, how much lead belonging to you he carried to his cellar. Send some person there that he dont know, and see if he don't sell him a ton of lead belonging to you.

April 20th. ·                              A Friend."
Indorsed—" Dr. G. Uhler, West Kens'g. Pa."

The declaration averred that the defendant composed the alleged libel, and sent it to Dr. Uhler, &c.; " meaning thereby that he the said plaintiff, feloniously did steal, take and carry away to his cellar, lead of great value, of the goods and chattels of the said Dr. George Uhler, and imputing to the said plaintiff the charge of larceny."

On the trial, before STROUD, J., on the 22d of January, 1840, the plaintiff's counsel called Dr. Uhler, who testified as follows:

" I know the parties; I know this paper, (looking at the alleged libel.) I received it a day or two after its date; it came to me through the post; I have seen a hand-writing said to be defendant's which looks like it; I never saw him write, nor heard him acknowledge his writing; I am not acquainted with his hand-writing."

Upon being cross-examined he said—" I kept it in my possession a day and a night, and then I gave it to the plaintiff. I have seen it since then once or twice; the first time was a month or so after; and then six months or a year before I saw it again; I don't know if I saw it again after then till to-day.

I made no mark on it at any time; I know it to be the same, because I know its general appearance, the letters, and every thing connected with it, and every word of it.

The plaintiff then called James Hunt, who testified as follows:

" I know the defendant's signature. This (looking at a paper handed him) dont't look like his signature; I believe this to be his signature; (looking at a paper marked No. 1, and dated Jan. 2, 1837;) and this is his, I have no doubt, (looking at a paper No. 2, dated Jan. 2, 1836;) and this is his, I have no doubt, (looking at a paper No. 2, dated Sep. 6, 1826;) and this," looking at No. 3, dated March, 13, 1826.)

Being cross-examined, he said—" I have seen the defendant write often; not for two years; I have seen him sign his name repeatedly. ·I don't think I ever saw him write, except his signature; as to what

(Baker *v.* Haines.)

I have seen him write is confined to his signature. There is generally a manifest difference between a common hand and signature: there is a considerable difference between the characters of writing and the signatures. The writing in these papers, (looking at the papers marked No. 1, 2, 3 and 4) is his. I have seen writing in checks acknowledged to be his; I am acquainted with his hand-writing; I have no doubt that it (the alleged libel,) is in Mr. Baker's hand-writing; I never saw it before."

Upon being cross-examined, he said, "I have no knowledge of his (the defendant's) hand-writing, except what I have stated. I never saw him write any-thing but his name; I have no recollection of having heard him acknowledge that any paper was his hand-writing; I have seen him fill up checks and notes."

The plaintiff's counsel then offered to read the alleged libel in evidence; to which the defendant's counsel objected, upon the ground that the witness had not testified to a sufficient knowledge of the defendant's hand-writing to permit the paper to be read in evidence; which objection was over-ruled by the judge; and the defendant excepted. The paper was then read in evidence.

Other witnesses were called by the plaintiff's counsel in respect to the circumstances upon which the supposed libel was founded. One of these witnesses was asked on cross-examination by the defendant's counsel—

"Do you know what is the defendant's character for disputing and speaking evil of others."

This question was objected to by the plaintiff's counsel; and rejected by the court.

· The defendant's counsel then called A. W. Johnson, who, was sworn, and said: "I know the parties, and from their infancy; I knew the defendant's hand-writing well. I have seen him write often." (Looking at the alleged libel,) " this I would not take to be his." The plaintiff concealed one pig of Dr. Uhler's lead; I saw it in his cellar; I had marked it with my finger nail."

Upon being cross-examined, " This paper, (marked No. 4,) is the defendant's signature, but I don't think the body of it is his writing. This, (marked No. 2,) I don't know the hand-writing of this. This, (No. 2,) I am not acquainted with this hand-writing. This, (No. 1,) has a resemblance to his writing; but I would not like to be qualified whether it is or not."

" I have been in the defendant's employ since 1836. This is my signature to bill and receipt, June 3, 1834, to West, (marked no 5.) I have seen the defendant make out bills, &c."

C. B. F. O'Neill, Esq., called by the defendant's counsel, said:

(Baker *v.* Haines.)

"I have known the parties since 1831. The plaintiff met and showed me the libel in 1836; the plaintiff called me on one side, and showed it to me; said it was the defendant's. I said, if so, he is a rascal; but thought him too much of a gentleman to do this. I went to the defendant's, to examine his writing: he wrote a bill to compare with his book; I examined them, and told the plaintiff I thought the libel was not the defendant's hand-writing, because of a particular letter; the plaintiff showed me a bill; I can't say this is it; I never thought the libel was the defendant's hand-writing."

George Weaver, called by the defendant, testified as follows:— "I am well acquainted with the defendant's writing; I have seen him write often." (Looking at the libel,) "The libel is not the defendant's writing; the defendant writes a stiffer and better hand. I am the defendant's brother-in-law."

Cross-examined—"These papers are his, (No. 1, 2, 3, 4,) "except Brown's bill, No. 1. I can't say of that."

The plaintiff then called Charles A. Hamilton, who testified as follows;—"I am a teller in the Kensington Bank; I have seen the defendant's signature to checks and notes of hand very often; (upon looking at the libel) I hardly know what to say of the libel; his, the defendant's hand-writing, is heavier than this; I would not say I believe it to be his."

The plaintiff then offered in evidence the papers laid before the witnesses, viz.

A bill for goods sold, dated 2d January, 1837, with a receipt signed Joseph Baker, marked No. 1.

An account of money paid, dated 6th September, 1826; also signed Joseph Baker, and marked No. 2.

A promissory note dated 13th March, 1826, marked No. 3.

A letter addressed to "Mr. Riley," dated March 31st, 1836, signed Joseph Baker, and marked No. 4.

A bill of goods sold, dated June 3d, 1834, signed A. W. Johnston, marked No. 5.

The defendant's counsel objected to the admission of these papers; but they were admitted by the learned judge, with the exception of the last (No. 5.)

The judge charged the jury that in point of law the innuendos were warranted by the alleged libel; but reserved the points of law for the court in bank.

The jury found for the plaintiff, and afterwards, viz., on the 5th of March, 1840, the court gave judgment upon the reserved points, for the plaintiff.

This writ of error was then taken; and the following errors were, assigned.

(Baker *v.* Haines.)

" 1st. The learned judge who tried the cause erred, viz. :·

1. In permitting the alleged libel to be read in evidence to the jury.

2. In overruling the defendant's question to the witness John Baird, viz. : " Do you know what is the defendant's character for disputing and speaking evil of others."

3. In permitting the plaintiff to give in evidence each and every one of the papers marked No. 1, 2, 3, 4 and 5.

2nd. The court erred in affirming the opinion of the learned judge who tried the cause upon the points ruled and reserved by the said judge.

3d. The words laid in the declaration do not bear the innuendoes thereon.

4th. The libel charged in the narr. is insufficient to support the innuendoes.

5th. The evidence was insufficient to sustain the innuendoes.

6th. The alleged libel is not actionable.

7th. The libel, as declared on and proved, did not make a case which in point of law authorised a verdict in favour of the plaintiff."

Mr. *Brewster*, for the plaintiff in error.

In *Holt on Libel,* p. 189, the cases are collected, and show that the innuendo in this case was not supported by the evidence; and therefore the recovery was not warranted. 1 *Roll. Abr.* 70. 3 *Inst.* 167. The alleged libel imports at most a breach of faith, and advice to Dr. Uhler. The evidence of what is stated in the letter would not convict the plaintiff of larceny. Dr. Uhler states that he delivered the lead to the plaintiff to purify. To charge a man with the commission of an act which appears by the circumstances not to amount to it, is not actionable. 6 *Bac. Abr.* Slander, C. Words are to be taken *in mitiori sensu.* *Starkie, Slander,* 46. *Cro. Jac.* 204. An innuendo can't extend the meaning of the libel. *Holt,* 258. It is not felony to convert to one's own use property entrusted to one. 7 *Dane's Abr.* 164. 7 *Com. Dig.* 759. *McClurg* v. *Ross,* (5 *Binn.* 218.) *Shaffer* v. *Kintzer,* (1 *Binn.* 537,) that innuendo of perjury will not cure defect of words. *Angel* v. *Alexander,* (20 *Eng. Com. Law Rep.* 70,) that ambiguous words must be explained by a *colloquium.* An innuendo must be confined to a simple reference to prior words; when it exceeds this it will vitiate the declaration; *Starkie,* 302. Comparison of hands is not admissible. 2 *Stark. Evid.* 374.)

(Baker *v.* Haines.)

Mr. *Dallas*, for the defendant in error, (having been requested by the court, to confine himself to the question of comparison of hands.)

Hunt swore that he was intimate with the handwriting of the defendant, and stated his means of knowledge from having often seen him write. One may be acquainted with the party's handwriting even without having seen him write. One having only seen a signature written is a witness. Then the libel being proved, we went on to corroborate by showing the malicious interference of the defendant, and on one occasion calling him thief. We further proceeded to give evidence of comparison of handwriting. We positively proved these other papers to be the handwriting of the defendant; yet they were not offered until the end of the case, when the whole evidence was gone through. They were then objected to as comparison of hands. This it is important to attend to. In the course of the defence a point of evidence was produced which is material. Mr. O'Neil examined a book, and said that he was satisfied the libel was not the defendant's writing. We called for the book, and it was produced, and was the main evidence to show that the libel was the defendant's handwriting. And it was after this that our other papers were given. No. 5 did not go to the jury: this it is true we offered to show that the libel was not written by Augustus Johnston, as was pretended, but the judge struck it out. *Atstook* v. *Roach*, (1 *Esp. Rep.* 351,) was a suit on a bill of exchange; defence forgery: the witness said he had seen the defendant write three times, and believed the bill his handwriting. Another witness who produced five bills accepted by the defendant, proved before the commissioners of bankruptcy; said on comparing that he did not think them to be his writing. For defendant said he knew his hand, and, on seeing the bill had no doubt it was not his. The plaintiff offered some bills which were objected to, but admitted. It is true that this is not now sustained in England, but on what reason? It is said sometimes jurors can't write. That is absurd here. The presumption is the other way. Every paper given in evidence here is referred to the jury. Again, it is said the party may pick out and arrange writings to suit his purpose. This presupposes knavery which is not to be presupposed but proved. If there be a trick it may be shown. There are two kinds of comparison; first, the witness is to compare; second, the jury are to do it. In England the first is followed. But, in this country, both are practised. Our reports show this. *M'Corkle* v. *Binns*, (5 *Binn.* 349,) where newspapers were compared. *F. B'k Lan.* v. *Whitehill*, (10 *Serg. & Rawle*, 110,) which reviews the authorities, and holds that a genuine paper may be handed to the jury to compare with the paper in question. *Bank* v. *Haldiman*, (1 *P. R.* 161.) S. P. *Callan* v. *Gaylord*, (3 *Watts*, 321,) which goes the whole length of the present case. There the plaintiff produced his account books, which were proved to be written (partly) by the defendant, and the

(Baker *v.* Haines.)

parts were pointed out, and were received in evidence to compare with the libel.

Mr. *J.·M. Read* on the same side, cited *Addison,* 33. *Com.* v. *Smith,* (6 *Serg. & Rawle,* 571.) *Pipher* v. *Lodge,* (11 *Serg. & Rawle,* 333,) to show that one not an expert can't be asked to compare, &c. S. P. *Vickroy* v. *Kelley,* (14 *Serg. & Rawle,* 372.) In Pennsylvania we don't stand alone in this. New York and New Jersey, in the east, are the only ones that differ. Others go even further. 3 *Phill. Ev.* (*by Hill. & Cowan,*) 1329, contains a reference to all these cases. The last case is, *Richardson* v. *Newcombe,* (21 *Pick.* 315,) proved specimens are evidence to compare by. *Moody* v. *Rowell,* (17 *Pick.* 490.) *Smith* v. *Fenner,* (1 *Gall.* 175.) The English cases, *Doe* v. *Newton,* (31 *Eng. Com. Law,* 407, 383,) cited, show that if a paper is proved in the cause, the jury may take it to compare. *Waddington* v. *Cousins,* (32 *Eng. Com. Law,* 645.) [Rogers, J.—Must the standard not be when the witness can swear he saw the party write, or sign, or heard him admit it?] Our cases all go (especially *Callan* v. *Gaylord,*) much further; it is sufficient if the handwriting be proved in the usual way, by one acquainted with it, and swearing to his belief. This, in corroboration, has always been admitted here. The jury then have a right to it. *Martin* v. *Taylor,* (1 *Wash C. C.* 7,) is relied on by the other side. It is a very short case. *U. S.* v. *Craig,* (4 *W. C. C. R.* 729,) is another U. S. case, and they seem all to refer to another kind of comparison of hands than our state courts; and they in criminal cases have followed the English. 1 *Baldw.* 39. *Strother* v. *Lucas,* (6 *Pet.* 763.) 2 *Phill. Ev.* 699, lays down the rule that any papers in evidence before a jury in the cause, they may compare with a paper that gets before them.

Mr. *Meredith* in reply.

Can the writings to be made a standard be proved merely by the opinion of witnesses. I don't think that arises here. No. 1, I take for example, which is, perhaps, the strongest. The only witness to it is Hunt, and his evidence might authorise the libel to go to the jury, but not the specimens. Johnston won't swear to it. No. 2 and 3 are also proved by Hunt. Johnston says of No. 4, it is the defendant's signature, but not the body. Of No. 3 he says, he don't know the writing. So of No. 2. No. 1, he says has a resemblance, but he won't swear to it. [Mr. *Dallas*—Weaver, a witness for the defendant, says that 2, 3, and 4, are defendant's handwriting.] Yes, but he says the libel is not. The paper No. 1 was no better proved than the libel, by the same witness, and on opinion. *Ignotum per ignotius.* In *M'Corkle* v. *Binns,* the paper was bought at the defendant's shop; there was presumption, and of the fact, not opinion. In the *Bank* v. *Whitehill,* the defendant admitted the administration account to be his handwriting. In *Vickroy* v. *Kelley* com-

parison of hands was not allowed, i. e. evidence of belief that a writing is in the handwriting of another, and then that to go to the jury. Here Hunt, the only witness, speaks merely as to having seen the signature of the defendant. The thing called a standard is no better than the writing itself. *Callan* v. *Gaylord* is not a case like this. Many witnesses gave their opinion as to the writing of the libel. Other persons proved the account books, it is to be presumed. At any rate the fact was proved. Such evidence as that offered here is no corroboration—it leaves it as doubtful as ever.

The opinion of the court was delivered by

ROGERS, J.—The evidence preliminary to the introduction of the alleged libel was sufficiently strong to justify the court in submitting the paper to the inspection of the jury. The ordinary proof of the opinion of the witness was given, and under these circumstances the question, whether it was the handwriting of the defendant, was for the jury, who are the ultimate judges of the genuineness of the paper. There is nothing in the first exception. The second exception was properly abandoned : but it is insisted that there is error in permitting the plaintiff to give in evidence the papers as specified in the third exception.

The doctrine in this state is, that mere unaided comparison of hands is not in general admissible. But in corroboration of testimony previously given, such testimony may be received. In *M'Corkle* v. *Binns*, (5 Binn. 340,) it is ruled that evidence from comparison of handwriting, supported by other circumstances, is admissible, And on the same principle from a comparison of the types, devices, &c. of two newspapers, one of which is clearly proved, and the other imperfectly, the jury may be authorised to infer that both were printed by the same person. After evidence has been given in support of a writing, it may be corroborated by comparing the writing in question, with a writing, concerning which there is no doubt. The same principle is affirmed in *Vickroy* v. *Kelly*, (14 *Serg. & Rawle*, 372.) *Callan* v. *Gaylord*, (3 *Watts*, 321.) *Lodge* v. *Pipher*, (11 *Serg. & Rawle*, 333.) *Farmer's Bank* v. *Whitehill*, (10 *Serg. & Rawle*, 110.) *Bank* v. *Jacobs*, (1 *Penn. Rep.* 161.)

But the objection is not to the general principle; but it is contended there is no adequate proof the genuineness of the papers which are intended as the standards of comparison. And on this point I am not aware of any direct decision; although in several cases it is plainly indicated that no doubt must remain as to the handwriting of the test paper. Thus in *M'Corkle* v. *Binns* the chief justice says, the paper must be identified beyond all doubt. And again, in the same case, he says, it may be compared with the writing concerning which there is no doubt. *The Farmer's Bank* v. *Whitehill*, was an original administration account, settled by the defendant and his

mother, respecting the estate of the defendant's father, and it was proved by the register of wills, that it was signed by the defendant and his mother, and sworn to by them. It was also admitted on the trial that it was his handwriting. Here nothing was left to conjecture or doubt. In the *Bank* v. *Jacobs*, the test paper was admitted to be genuine; and Mr. Justice SMITH says, that when a witness has seen a person write, and declares he knows his writing, he may compare it with writings which he has seen the person write, or which it is admitted he wrote. *Callan* v. *Gaylord* is supposed to have a strong bearing on the point, because, in the argument, a distinction is attempted between papers admitted that it is said may go to the jury in corroboration, but not papers proved. But it must be remarked that this practice is not noticed by the court; and, in truth, there is no such distinction; for there can be no doubt that papers proved may be admitted for purposes of comparison. The difficulty is not as to the character of the proof, but the manner of the proof. The court, ruled the broad principle, that comparison of hands is evidence in corroboration of other evidence which tends strongly to prove that a libel is in the handwriting of the defendant. The chief justice takes it for granted that the book, which was offered in corroboration, was, in fact, written by the defendant. It does not appear to have been denied that the entries in the plaintiff's book were in the handwriting of the defendant; and this, in truth, could not be done, as he had been in his employment as his book-keeper.

Mr. Justice SHAW, in *Moody* v. *Rowell*, (17 *Pick.* 495,) seems to intimate that proof of the genuineness of the standard offered for comparison, must be directed to the fact of its having been written by the party, by one who saw him write it. See also *Richardson* v. *Newcombe*, (21 *Pick.* 317.)

We conceive it to be very material that strict proof of the genuine or test paper should be first given; that no reasonable doubt should remain on that point; and nothing short of evidence of a person who saw him write the paper, or an admission of being genuine, or evidence of equal certainty, should be received for that purpose. Any other rule would lay the doctrine open to Mr. Starkie's principal objection to the general principle, who, speaking as to the receipt of evidence as to comparison of hands, says, that, perhaps, after all, the most satisfactory reason for its exclusion is, that if such comparisons were allowed, it would open the door to the admission of a great deal of collateral evidence, which would go to a very inconvenient length. For in every case it would be necessary to go into distinct evidence to prove each specimen produced to be genuine; and even in support of a particular specimen evidence of comparison would be receivable, in order to establish the specimen, and so the evidence might branch out to an indefinite extent. 2 *Stark. Ev.* 375. This inconvenience is in a measure avoided by exacting preliminary proof which leaves no reasonable doubt as to the genuine-

(Baker v. Haines.)

ness of the standard or test paper. This would seem to be reasonable from the very nature of a standard or test, which should itself be certain and fixed.

The preliminary evidence which was given, was an opinion of the principal witness on whom the plaintiff rested this part of his case, with the aid to be derived from the opinion of another witness, who says that the papers No. 1, 2, 3, and 4, are his, that is, the defendant's. It is, however, nothing more than his believing at last, as it is not pretended he saw him write them, nor is it any where said that the defendant acknowledged the writing to be his. There is rather stronger evidence that the specimen is not his hand-writing, than of the authenticity of the alleged libel, as we have the opinion of one more witness of the one than of the other. It is very plain that without the restrictions which have been indicated, evidence of comparison of hands, would very often be used for very oppressive and pernicious purposes. As the party who offered them would have the selection of the criterion or test specimen, it would very frequently happen that it would be out of the power of the adverse party to disprove the allegation that the writing was his. In the case at bar, the libel is as much a test of the authenticity of the standard of comparison, or nearly so, as the latter is of the authenticity of the former.

As this cause goes down for another trial, we refrain from expressing an opinion on the six last errors. If the declaration be defective in any respect, as alleged, it may be amended before or on the trial.

Judgment reversed, and *venire de novo* awarded.