# Power *versus* Frick.

1. A plaintiff in error may have a second writ of error, after a *non pros.* of the first, but it will not be a *supersedeas* to an execution.

2. A witness may testify to handwriting from a comparison of hands, provided that he saw the signature written to the test paper, or if the party has admitted the signature to be his.

ERROR to the Court of Common Pleas of *Perry county*.

The defendant in error moves to quash this writ of error, for the reason that the judgment was rendered by the court below, 9th of April, 1851, and a writ of error was sued out to May Term, 1851, and that coming on for argument, the plaintiff in error took a nonsuit. The record having been returned to the court below, the plaintiff in error voluntarily paid the amount of the judgment, and took the receipt of the plaintiff below, upon the record of the judgment. After which, to May Term, 1852, this second writ of error is sued out, and restitution asked for.

The error alleged was, to the sufficiency of the testimony to prove the execution of a lost writing, the facts of which fully appear in the opinion of the court.

————, for plaintiff in error.

————, for defendant in error, upon the question of restitution, referred to *Cassel* v. *Duncan*, 2 S. & R. 57.

Upon the right of the plaintiff to sustain the second writ of error, he cited *Birch* v. *Trist*, 8 East, 411.

Upon the question of the sufficiency of the proof of the handwriting, he cited 1 Penna. R. 216; *Baker* v. *Harris*, 6 Wh. 284; *Depue* v. *Place*, 7 Barr, 428; *Porter* v. *Kelley*, 1 H. 641.

The opinion of the court was delivered in 1854, by

WOODWARD, J.—The counsel for the defendant in error moved to quash this writ of error, on the ground that a previous writ had been *non pros'd* in this court, through the negligence of the plaintiff in error, and he expressed a desire for the opinion of the court on the question, whether under such circumstances a second writ will lie.

[Power *v.* Frick.]

The point ruled in *Birch* v. *Triste*, 8 East, 412, is, that where a first writ of error abates, or is put an end to by the act of the plaintiff in error, a second writ of error, brought in the same court, is not a *supersedeas* of execution, as the first is, and execution may then be sued out, without leave of the court.    In delivering his opinion, Lord Ellenborough quotes a *dictum* of Chief Justice Holt, in *Hartop* v. *Holt*, 1 Salkeld, 263, that if a plaintiff be non-suited, he shall not have a new writ of error.

It is this *dictum* which is cited in Tidd's Practice; but there is nothing in the case of *Hartop* v. *Holt*, to justify it.    That case arose upon an execution sued out after a second writ of error, and the chief justice held, not that a second writ of error would not lie, but that it was no *supersedeas*, and that the plaintiff was guilty of no contempt, in taking execution in disregard of it.    There is considerable conflict in the English cases, as to the right of a party to a second writ of error, after the abatement of the first, by the act or neglect of the plaintiff, but in none of them, that I have been enabled to examine, has it been held, that the *non pros* of a writ takes away the right to a second writ.    In Pennsylvania, the practice is correctly described in the 1st volume of Troubat & Haly's Practice, page 450. When the cause is reached, the defendant in error is entitled to a *non pros*, with costs, if the plaintiff in error is not in readiness to proceed, unless good cause be shown to the contrary; or the defendant may proceed with the argument, and require a final decision, so as to prevent a renewal of the writ of error after *non pros*.

The uniform practice of this court has been, to allow a second writ after *non pros* of a former one; and conceiving that it is in aid of justice, and in harmony with the general principle which allows a renewal of an action at law, after a judgment of *non pros*, we overrule the motion of the plaintiff in error.

The only other question raised upon this record is, whether the court should have admitted the evidence offered by the defendant, and which is described in the bill sealed.    When handwriting is to be proved, it can only be done by comparison of hands, unless the witness saw the signature, or document written.    His testimony consists in the expression of his *belief*, on comparing the signature or document in question, with the exemplar in his mind, which must be derived from some previous *knowledge* of the handwriting of the party.    Mr. Greenleaf, in the first volume of his valuable work on Evidence, page 733, § 577, states two modes of acquiring this knowledge.    The first is from having seen the person write.    The second is "from having seen letters or other documents, purporting to be the handwriting of the party, and having afterwards personally communicated with him respecting them, or acted upon them as

[Power *v.* Frick.]

his, the party having known and acquiesced in such acts, or by such adoption of them, into the ordinary business transactions of life, as induces a reasonable presumption of their being his own writing." The witness who was offered to prove the last receipt, had never seen Frick write; had never personally communicated with Frick, respecting the letters he had seen; and had never acted upon them—Frick having known and acquiesced" in such acts—nor did the witness know of their adoption, in the ordinary business transactions of life, except as he learned it from Welsh. This witness, therefore, was not within any branch of the rule, and could not be considered as possessing the *knowledge* necessary, as a foundation for the *belief* that comes of a comparison of hands. But the clerk of Frick, who was offered, was in possession of the necessary knowledge; for he was " well acquainted with Frick's signature, from seeing him write very frequently;" but, on the other hand, he had never seen the *receipt*, and therefore he could not institute the comparison of hands. This offer, presents the case of knowledge in one witness, and faith in the other, whilst the law requires a witness having both faith and knowledge. In other words, that comparison of hands, which a witness may institute, and from which he may testify to his belief, must be founded in knowledge of his own, and not in the knowledge of another, communicated to him.

The rule in Pennsylvania, has been laid down even more narrowly than by Mr. Greenleaf. In *Baker* v. *Haines*, 6 Wharton, 284, it was ruled, that the test, or standard paper, must be established by evidence that a person saw the party write the signature, or that the party had admitted the signature to be his.

In *De Peir* v. *Place*, a justice of the peace, called to prove the handwriting of a constable, produced twenty returns, signed by the constable, and handed in to him, and received as returns, and said he had no doubt he had seen the constable sign some of them, but he was unable to specify any particular one, which he had seen him sign. Held, that he had not competent knowledge of the constable's handwriting.

See also, *Porter & Wilson* v. *Kelley*, 1 Harris, 641. If the offer did not fall within the rule of Mr. Greenleaf, it came far short of that established in these cases. It being a lost paper that was to be proved, the court was the proper judge, whether the preliminary evidence offered, was competent to establish its existence, and they very properly excluded it from the jury.

Judgment affirmed.