## JOSHUA S. HANLEY V. AARON GANDY.

The most satisfactory proof of handwriting, when the person whose signature is in question is not himself competent to testify, is the testimony of a witness who saw the instrument executed and is able to identify it, and next to this is the testimony of witnesses who have seen the person write, or had access to or possession of his writings.

This latter mode of proof, though it involves a comparison, is not subject to the objection that it is proof by comparison of hands; that objection applies when the witness has had no previous acquaintance with the handwriting of the person whose signature is in question, but is called upon to state upon a comparison of two signatures, of which one is admitted or proved to be genuine, whether they were both executed by the same person.

It appears to be well established in England, that it is not competent to prove handwriting by a comparison of hands; but in this country the authorities are conflicting, and in some of the States such evidence seems to be admissible.

This subject is considered in the opinion both upon principle and precedent, and the conclusion is deduced, that the English rule, excluding proof of handwriting by mere comparison, is sustained by the weight of authority, and is best calculated to secure juries from imposition. *Held*, therefore, that it was error to allow other signatures to be submitted to the jury as evidence by comparison of the genuineness of the signature in question.

It is not intimated, however, that exceptions arising from necessity, as in cases of ancient writings, may not be recognized here as in other States, where the English rule has been adopted.

APPEAL from Tarrant. The case was tried before Hon. NAT. M. BURFORD, one of the district judges.

On the 9th of November, 1859, the appellee, Gandy, filed his petition against Joshua S. Hanley, the appellant, both in his individual capacity and as the administrator of J. A. Hanley, deceased, to recover the amount due upon a promissory note for $1,130 60, purporting to have been executed by the said Hanleys to Alfred J. Burk, or bearer, on the 20th day of February, 1858.

The defendant filed a plea of *non est factum* under oath. (Paschal's Dig., Art. 1443, Note 549.)

The cause came to trial at the summer term, 1860, when the plaintiff was permitted, notwithstanding the objections

of the defendant, to put in evidence other notes and documents bearing the signatures of the Hanleys. There was other evidence introduced by both parties, but it is not referred to in the opinion of this court. The jury found in favor of the plaintiff, and judgment was rendered accordingly.

The defendant's motion for a new trial was overruled, and he appealed, assigning for error the admission of the other notes and documents.

*J. W. Ferris,* for the appellant.—Can the jury compare the signatures of the different papers before them, and decide regardless of the testimony of the witnesses? If so, why introduce witnesses at all? Could not certain signatures be selected, bearing the nearest resemblance, and be foisted suddenly upon a jury with no notice to defendants? Would such be a just and fair rule? Documents irrelevant to the issues on the record cannot in any case be received in evidence for the purpose of comparison by the jury. This is the modern well-established English rule. (2 Phil. on Ev., 4th Am. ed., 616; Bromage v. Rice, 7 Car. & Payne, 548; Doe v. Luckermore, 5 Adolp. & Ellis, 703; 2 Greenl. on Ev., § 580, and note, with cases cited.) The American cases are equally clear against a comparison by the jury. (9 Cow., 94, 112; 1 Leigh, 216; 2 Id., 249; 6 Rand., 106; Id., 316; 3 Halst., 87; 1 Dana, 179, 181; 14 Serg. & R., 372; 3 Watts, 321; 11 Serg. & R., 333; 3 N. H., 47.)

*A. Bradshaw,* for the appellee, cited 11 Mass., 309; 10 Id., 1; 5 Vt., 532; 2 Johns. Cas., 211; 1 Pa., 161; 10 Serg. & R., 110; 5 Johns., 144; 17 Pick., 490; 21 Pick., 315; 6 Wheat., 284.

Donley, J.—The pleadings of the defendant having put in issue the execution of the note, the plaintiff offered to

submit to the jury other notes and signatures of the appellant, and the deceased, J. A. Hanley, to prove by comparison the signatures to the note in controversy. The appellant objected, because the writings offered were not admitted to be genuine, were not papers connected with the cause, and that the jury should not decide by a comparison of writings. The objections were overruled, and the papers were submitted to the jury with the other evidence in the cause.

The most satisfactory testimony of handwriting, where the party alleged to have executed the instrument is incompetent to testify, is a witness who saw the instrument executed and is able to identify it. The next best testimony is that of witnesses who have seen the party, whose writing is in controversy, write, or have had access to or possession of his writings, so as to impress the character of the writing upon the mind, and are enabled to form an opinion by comparing the impression of the writing on their minds with that which may be submitted for their examination; and while a comparison is made of the impression on the mind with the paper submitted for examination, it is clear that this is not such a comparison as is referred to when it has been held that it was not competent to prove handwriting by comparison. The exemplar which is upon the mind must of necessity be compared with the writing which may be submitted for examination. No objection has been suggested to this course; the objection to proof by comparison is, when two writings are submitted to the witness, who has no previous acquaintance with either, to say upon examination, by placing them in juxtaposition, whether the writings were executed by the same person. Upon this question the authorities are to some extent conflicting.

In Phillips on Evidence, vol. 2, p. 609, it is said: "The proof of handwriting is founded on the knowledge of the general character. The witness is supposed to have formed

a standard in his mind, and with that standard to compare the writing in question. But a witness will not be allowed to state to a jury the conclusion or belief of his mind as to a piece of handwriting being that of a particular individual, when that conclusion is made for the purpose of the issue by means of a comparison of the disputed writing with another written specimen of the same individual produced in court."

This principle, it is believed, is sustained by weight of authority, and more certainly secures juries from imposition. It is possible an attempt might be made, in selecting the writings which may be submitted by an interested party for the purpose of establishing or disproving a writing, to select specimens that may mislead. In England, it is believed that the rule is well established that it is not competent to prove handwriting by comparison. In Mudd v. Luckamore, 31 Eng. Com. Law Rep., 795, the court says: "Now, in the present case, it must be conceded, that the witness had not acquired his knowledge of the character of the handwriting, whatever it was, in either of the ordinary modes. He had studied certain signatures selected by one party, and had acquired an impression of some general character pervading the whole; he had heard it proved that those were written by the witness Stribling, and from these materials he was to speak. It is asked, how does this differ from the case of knowledge acquired in the course of a correspondence, where the standard rests equally on the assumption that the letters are written by the party whose they purport to be? With respect to the assumption, there will be a fitter place to point out the distinction; but I answer here, that the two cases differ in that which is essential, in the undesignedness of the one, the fact that the letters are written in the course of business, without reference to their serving as aids to a collateral purpose in some future unknown cause, and in the selection which is made in the other by the party to

the cause, who seeks to produce them for a particular purpose." (Clermont v. Tulledge, 4 Car. & Payne, 1; Grams v. Hunter, 2 Id., 477; Eágleton & Coventry v. Kingston, 8 Vesey, 474, 475.)

In Strother v. Lucas, 6 Peters, 766, it is said that "It is a general rule, that evidence by comparison of hands is not admissible when the witness has had no previous knowledge of the handwriting, but is called upon to testify merely from a comparison of hands. There may be cases where, from the antiquity of the writing, it is impossible for any living witness to swear that he ever saw the party write, and comparison of handwriting with documents known to be in his handwriting has been admitted, but these are extraordinary instances, arising from the necessity of the case." (Jackson v. Phillips, 9 Cow., 112; Wilson v. Kirkland, 5 Hill, 182; Rowlett's Administrator v. Kile's Administrator, 1 Leigh, 222; Woodward v. Spellers, 1 Dana, 180, 181.)

Different rules have, however, been adopted by the courts of other of the States.

In Hammond's Case, 2 Greenleaf, 31, "It was proved by the confession of the prisoner that the body and signature of certain checks were in his handwriting, and that they were lost or destroyed, so that they could not be produced on the trial; and Charles Fox, who had carefully examined those checks, and the similitude between those signatures and that of the forged check, and testified to his belief that the signature of that check was in the handwriting of the prisoner." It was held that the evidence was properly received.

In Page v. Hammons, 14 Maine, 481, a witness was called who had never seen the defendants write, was unacquainted with their handwriting, and possessed no peculiar skill in signatures. He was requested to examine ten specimens and signatures of a number of the true signatures of the defendants, and therefrom to give his opinion

whether those affixed to the note were the handwriting of the defendants. This was objected to, and the testimony was rejected. The court says: "To prove the handwriting of a person, any witness may be called who has, by sufficient means, acquired a knowledge of the general character of the handwriting of the party whose signature is in question. This may have been acquired from having seen him write, from having carried on a correspondence with him, or, as was decided in Hammond's Case, 2 Greenleaf, 32, from an acquaintance from having seen handwriting acknowledged or proved to be his. These are the sources of that previous knowledge which may qualify the witness to state his belief whether the handwriting in question is or is not genuine; he testifies from a standard of comparison existing in his mind, the sources of which are not usually in court to be produced at the trial." It was held, that the testimony was properly rejected.

In Homer v. Wallis, 11 Mass., 310, the plaintiff produced a note proved to have been signed by the defendant by a witness who saw him sign it. This was permitted to go to the jury, as it is believed for the purpose of comparison. The court says: "Whatever doubts there may now be in England as to proof of signatures by comparison, that a comparison by the jury of the contested signature with other writings proved to be genuine is, by the common law of this Commonwealth, proper evidence."

In Moody v. Rowell, 17 Mass., 491, a witness was permitted to give his opinion, founded on comparison of handwriting, merely as to the want of genuineness of the defendant's signature to the note. The witness was also permitted to testify as to the want of genuineness of such signature from the mere inspection of the note in question. The plaintiff objected to the admission of this evidence, "the witness was a teacher of writing." It was held that the evidence was properly received.

In Borman v. Plunkett, 2 McCord, 518, the plaintiff

offered in evidence two papers, acknowledged to have been signed by the defendant, with a view to assist the jury in forming an opinion of the fact by comparing them with the bond which the plaintiff was endeavoring to prove. It is said in this case, "The best and most usual evidence of handwriting is that of a person accustomed to see the party write. It is by this means the character of the writing is fixed in the mind, and forms the best standard by which to determine the identity; but it will not be denied that the judgment would be powerfully assisted by the actual presence of the characters on which the standard was formed; and it follows that, in the absence of better proof, some opinion may be formed by comparing that which is acknowledged to be genuine with that which is disputed, and, feeble as it may be, it is nevertheless a circumstance calculated in some measure to assist the judgment in deducing a conclusion from other parts which are doubtful." "I come, therefore, to the conclusion, as a circumstance in aid of doubtful proof, comparison of handwriting is admissible, but *per se* is so feeble as to be unsafe to act upon, and that in the absence of any other proof it would be inadmissible."

In Pennsylvania, after evidence has been given in support of a writing, it is said that it may be corroborated by comparing the writing in question with other writing about which there was no doubt. (Farmer's Bank of Lancaster v. Whitehill, 10 Serg. & Rawle, 110; Gallan v. Gaylord, 3 Watts, 321.) Yet in this case it is said, that "naked, unassisted comparison of hands is inadmissible, when the question is not on the writing of a public officer so long dead as to preclude the possibility of anything better."

In Dodge v. Phypher, 11 Serg. & Rawle, 333, it is said no authority has been shown to prove a writing from the naked comparison of hands. In Myers v. Toscan, 3 N. H., 47, it is said, "We take it to be a well-settled principle of law, that it cannot be left to a jury to determine whether

a signature is genuine by comparing it with other signatures proved to be genuine. But where witnesses acquainted with the handwriting in question have been called and examined, other signatures proved to be genuine may be submitted to the jury to corroborate or weaken the testimony of such witnesses."

In Bowman v. Sanborn, 5 Foster, 25 N. H., 87, "if a witness have a knowledge of the handwriting of the person in question, which has been derived from seeing him write, though it be but once, he may give his opinion;" "when papers are already in evidence for other purposes, and about whose genuineness there is no dispute, the jury may make a comparison between them and the writing in question."

In Lyon v. Symme, 9 Conn., 61, 62, the question was, whether the judge at the circuit was correct in admitting other writings, proved to be genuine writings of the defendant, to go in evidence to the jury for them to compare with the paper in dispute, and thereby to ascertain whether it were the handwriting of the defendant.

It was held, that the testimony was properly received. The conflict in the decision on this question, it is believed, cannot be reconciled. And it appears to us that the English rule, which is also the rule in the United States Supreme Court, and many of the State courts, is the better rule.

If it be permitted to prove handwriting by comparison, controversy will likely arise on collateral issues. Efforts may be made by the parties interested to procure specimens of writing supposed to be favorable to the party introducing them.

The writing offered as a specimen, if not admitted, must be proved to be the signature of the party whose signature is in controversy. This may induce the necessity of calling witnesses to identify the specimens as the handwriting of the party whose they purport to be. An issue is cre-

ated, which, when determined, decides no questions of right between the litigants.

It is believed that the English rule enables the jury, with more certainty, to decide the matters really in issue between the litigants. In this cause, the jury were to decide by comparison of hands, without having any previous acquaintance with the handwriting, so far as appears from the record. It does not appear that the jury, or any of their number, were experts. The writings submitted to them were not papers necessarily before them. The court erred in overruling the objections to the testimony. Errors have not been assigned with such certainty as to require a more extended discussion.

The judgment is reversed, and the cause

REMANDED.